# Incorporation of Flemington Borough.    Philip H. Walker's Appeal.

*Boroughs—Incorporation—Withdrawal of names of petitioners—Reconsideration by grand jury.*

It is no ground to set aside proceedings to incorporate a borough that the day after the report of the grand jury was agreed upon and signed by the foreman, but before it was presented to the court, the request of two of the jurors for a reconsideration of the case was refused by the foreman.

At the same time that a petition for the incorporation of a borough was laid before the grand jury, a written request was presented to the court on

behalf of some of the petitioners for leave to withdraw their names from the petition. The court made the following order: "Leave granted to lay the within before the grand jury." *Held*, (1) that the order was not in terms, or by necessary or reasonable implication, leave to the petitioners to withdraw their names; and (2) that at that stage of the proceedings they had no right to withdraw them.

An owner of land who files a specific objection to the inclusion of it in a borough will not be heard to complain that his objection was removed by decree of the court.

Parties who oppose the inclusion of land in a borough cannot object to the exclusion of it on the ground that a formal request to exclude was not made by the owner of it.

*Boroughs—Incorporation—Power of court over boundaries.*

*It seems* that the authority given to the court by the act of April 1, 1863, to exclude farm land carries with it the power to make such modification of the boundaries of the proposed borough as the exclusion of the land renders necessary for the protection of all interests concerned. Per Mc-Collum, J.

Argued March 19, 1895. Appeal No. 84, July T., 1894, by Philip H. Walker et al., from order of Q. S. Clinton Co., Sept. T., 1892, No. 1, Miscellaneous Docket, incorporating the borough of Flemington. Before Sterrett, C. J., Green, Williams, McCollum and Fell, JJ. Affirmed.

Petition for the incorporation of a borough.

From the record it appeared that on May 11, 1892, the grand jury filed a report in favor of incorporating the borough in accordance with the prayer of the petitioners.

The following exceptions were filed to the report.

"1. The return handed in to the court was not the finding of the majority of the grand jury. A vote was taken the day before the return was made, which resulted in a majority of one in the grand jury in favor of the borough. After the adjournment two of the grand jurors who had voted in favor of the borough desired to change their vote, and consulted counsel not concerned upon either side as to their right to have the finding reconsidered, and he advised them that they had such right. They sent then for one of the witnesses called by the remonstrants, to appear before the grand jury, the next morning, and when he came, at their request, they informed him of their intention to change their votes. When the grand jury met the next morning they requested a reconsideration of

the case, which the foreman refused, stating that he had signed the return, and it was too late to reconsider, after which the foreman handed in the return as it now stands. [1]

" 2. A clear majority of the freeholders residing within the limits of said proposed borough were not petitioners for the same. At the time the petition was submitted to the grand jury it was signed by eighty-nine persons, of whom eleven had withdrawn their names by leave of court, seventy-eight remaining as petitioners. The remonstrance was signed by sixty-five persons besides the eleven who had withdrawn their names from the petition, making seventy-six who were then opposed to the borough. A considerable number of the petitioners were not freeholders, so that a majority of the freeholders then appeared as opposing the borough. Since the hearing before the grand jury six more of the petitioners have withdrawn their names, so that now, of the alleged freeholders residing within said limits, eighty-two are opposed to the borough and seventy-two in favor of it. [2]

" 3. The village of Flemington is at one end of the territory proposed to be incorporated, and does not cover much, if any, over one third of said territory. At the other end said territory comes up to the line of the city of Lock Haven. A considerable portion, probably one third, of the residents within the lines of the proposed borough live on the hill adjoining the city of Lock Haven, forming geographically part of said city, and separated from the village of Flemington by nearly half a mile of territory, which is altogether used for farm land, with but few houses ; the said residents adjoining Lock Haven being, with one exception, unwilling to be included in said borough. [4]

" 4. A large amount of farm land, not included within the village of Flemington, or needed for borough purposes, is included within the proposed limits. There are three public roads leading 'from Lock Haven to Flemington. The one turns off from Fairview street at the house of Alexander Montgomery, turns to the left about half way from the city to the village of Flemington, till it reaches the turnpike, then immediately leaves the turnpike, going over the hill to the right, till it enters Flemington. This road lies all the way between Alexander Montgomery's house and the village of Flemington through farm lands. The middle road, known as the turnpike, ·is built up

about one and a half squares from the Lock Haven city line, and is within the limits of Price's addition to Lock Haven. It then passes for a quarter of a mile through farm lands before entering the village of Flemington. The third road leads a ound the hill in the direction of the canal, and runs for half a mile through farm land, there being but four houses from the city line to Sturdevant street in Flemington.

" There are two cross streets laid out on the plot of Price's addition to Lock Haven, and opened, on the right side of the turnpike, going away from Lock Haven, extending one square to the right, with which exception there are no cross streets between the city of Lock Haven and the town of Flemington, on any of said roads." [5]

MAYER, P. J., filed the following opinion on the exceptions :

" We have carefully considered the exceptions filed to said application and the testimony bearing on the same.

" The first of the exceptions cannot be considered for the reason that the court is bound to accept the return of the grand jury, and cannot take into consideration what occurred after the grand jury had made their finding.

" As to the second exception, we are satisfied, after carefully reading the testimony, that the weight of evidence shows that the requisite number of freeholders signed the original petition in order to give the court jurisdiction.   [After the petitioners had signed the original petition and it was laid before the grand jury they could not withdraw their names so as to defeat the application.] [3]   The second exception is therefore not sustained.

" [As the court has changed the boundary of the proposed borough by a new line, excluding from the borough that portion adjoining the city of Lock Haven, which will meet the objection raised by the third exception, the new boundaries, as fixed by the decree to be entered, will also remove the objections raised by the fourth exception.] [6]

" All the exceptions are, therefore, overruled."

*Errors assigned* were (1, 2, 4, 5) in overruling exceptions, quoting exceptions as above; (3, 6) portions of opinion as above; (7, 8) in decreeing the incorporation of the borough.

*Charles Corss*, for appellants.—In ordinary cases the proceedings of the jury are private and their findings conclusive, and the court will not go behind them. The hearing in this case was however public, and was in fact attended by all who took an interest in the case. The finding was not authoritative, or binding upon the court, but advisory only.

The petition for a borough and the withdrawal of the petition were referred as one paper to the grand jury, by an indorsement identically the same upon each, viz: " 11 May, 1892, leave is granted to lay the within before the Grand Jury. By the Court, JOHN A. SITTSER, P. J.," and both papers were marked " filed May 11, 1892." Judge SITTSER knew when the withdrawal petition was presented to him, whether it was too late, and had it been so, would have refused it. All things are presumed to be rightly done in a court of justice and it will not be presumed that Judge SITTSER made the order too late, and when he had no right to make it, without any proof whatever.

The court should have sustained the exception against incorporating into a borough territory, of which one half was used exclusively for farming purposes, and also the exception against incorporating into one borough two distinct villages, one a part geographically of the city of Lock Haven: Duquesne Bor., 147 Pa. 67 ; Tullytown Bor., 1 Dist. Rep. 295.

The majority which gives jurisdiction must be a clear majority, not depending upon a shifting to one side or the other of two or three names, or upon the reconciling of conflicting testimony, or upon the credibility of the respective witnesses : Taylorsport Borough, 21 W. N. C. 534.

*H. T. Harvey*, for appellees.—Grand jurors will not be permitted to testify or give information relative to the proceedings which occurred before the grand jury: Zeigler v. Com., 22 W. N. C. 111; State v. Baker, 20 Mo. 338; Thomas & Merriman on Jurors, 742.

The legislature have vested in the court and grand jury the discretion to determine whether or not the conditions prescribed by law to entitle the petitioners to be incorporated into a borough have been complied with: Rand v. King, 134 Pa. 641; Blooming Valley Borough, 56 Pa. 66; Tailor Borough, 160 Pa. 479.

The court may confirm the charter of the borough and at the same time modify the boundaries so as to protect the right of surrounding landowners and do justice to all the interests to be affected: Tullytown Borough, 1 Dist. Rep. 292.

Though the opinion of the grand jury is of great assistance in determining disputed questions of fact the court must exercise an independent judgment: Edgewood v. Borough, 130 Pa. 348; Incorporation of Lehman, 4 Pa. C. C. 37; Sworesville Borough, 5 Kulp, 171.

OPINION BY MR. JUSTICE McCOLLUM May 30, 1895:

The parties who complain of the exclusion of territory the inclusion of which constituted their most material objection in the court below to the incorporation of the proposed borough cannot be justly accused of an undue regard for consistency in their efforts to defeat it. There is nothing in the record which shows that they were residents of the borough as incorporated, or that any resident of it excepts to the decree of incorporation. If therefore they have any standing to contest the decree we may fairly infer that it is as residents or taxpayers of the township affected by it. But as the township was not prejudiced by a modification of boundaries which saved to it a tract of valuable land they ought to base their attack on the decree on other grounds if any appear in the record to warrant it. We are not prepared to say that parties who opposed the inclusion of the land can object to the exclusion of it on the ground that a formal request to exclude it was not made by the owners of it. An owner who requested that his land be excluded from the proposed borough would not be allowed to attack the decree of incorporation on the ground that his request was complied with, and if in lieu of a formal request he filed a specific objection to the inclusion of it he ought not to complain that his objection was removed by the decree.

Speaking for myself, only, the authority given to the court by the act of April 1, 1863, to exclude farm land, carries with it the power to make such modification of the boundaries of the proposed borough as the exclusion of the land renders necessary for the protection of all interests concerned, and there was no misuse of this power in the case at bar.

More than four months after the grand jury reported in favor

of the proposed borough, an exception was filed alleging that the day after the report was agreed upon and signed by the foreman, but before it was presented to the court, two of the jurors requested a reconsideration of the case, but did not obtain it. We discover no error in the ruling on this exception. Nor do we think any error was committed in overruling the second exception. In that it was alleged that, at the time the petition for the incorporation of the borough was submitted to the grand jury, a sufficient number of petitioners had withdrawn their names from it, by leave of court, to defeat the application. The record does not show that any of the petitioners withdrew their names from the petition or that leave was granted to them by the court to withdraw their names from it. This alone is a sufficient answer to the exception. But the exception was not supported by the evidence. An attempt was made to show that on the day the petition was laid before the grand jury a written request was presented to the court in behalf of some of the petitioners for leave to withdraw their names from the petition, on which request Judge SITTSER made the following indorsement: "11 May 1892 leave granted to lay the within before the grand jury." This indorsement was not in terms or by necessary or reasonable implication leave to withdraw their names. Besides at that stage of the proceedings they had no right to withdraw them. But we need not further discuss or consider the evidence submitted in support of the exceptions. It has been duly considered and passed upon by the court below. All the jurisdictional facts appear upon the record and we find nothing in it to require us to reverse the decree. We therefore overrule the specifications.

Decree affirmed.