## BOARD OF LEVEE INSPECTORS OF CHICOT COUNTY v. CRITTENDEN et al.

### (Circuit Court of Appeals, Eighth Circuit. May 2, 1899.)

### No. 1,013.

1. CORPORATIONS—CREATION BY IMPLICATION—CONFERRING CORPORATE POWERS ON LEVEE BOARD.

A board of levee inspectors created by act of the legislature of Arkansas for a county, and given the powers usually incident to corporations, including the power to condemn land for levee purposes, employ engineers, attorneys, and other agents, make contracts for work, and take bonds from the contractors, and fix the rate of taxation for levee purposes within their

district, constitutes a corporation, with power to sue and be sued, although not in express terms declared by the act to be a corporation.

**2. LEVEES—RIGHT TO COMPENSATION FOR LANDS TAKEN OR INJURED—LAW OF ARKANSAS.**
Whether or not there exists a servitude upon the lands bordering on the Mississippi river within all the original Louisiana territory which authorizes the taking of land for a public levee without compensation (a question not decided), it has never been the policy of the state of Arkansas to claim or exercise such right, and it cannot be asserted in a federal court by a board of levee inspectors created by the legislature of that state by an act which provides for the payment of compensation for lands so taken.

**3. SAME — TAKING EARTH AND TIMBER FOR REPAIRS — RIGHT OF OWNER TO COMPENSATION.**
A levee board, in taking earth and timber from land of an individual owner for the repair of a levee previously constructed, acts in its corporate capacity and within its powers, although there is no statutory provision for such taking; and the board is liable in such capacity, under the constitution of Arkansas, for just compensation to the landowner for so much of his property as was "taken, appropriated, or damaged."

**4. EMINENT DOMAIN—DAMAGES FOR PROPERTY TAKEN—BENEFITS.**
General benefits resulting to a landowner in common with others from a public improvement are not to be taken into consideration, as against the value of his property taken or destroyed in making such improvement.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

Sterling R. Cockrill and Ashley Cockrill, for plaintiff in error.

F. M. Rogers, U. M. Rose, W. E. Hemingway, and G. B. Rose, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. This action was brought by O. B. Crittenden and Henry Crittenden, the defendants in error, against the board of levee inspectors of Chicot county, Ark., the plaintiff in error, to recover damages for entering upon their land, and by excavations and digging upon the land destroying one house, filling up a ditch cut for the purpose of drainage, and damming up the natural outlet for the surface water, and destroying timber. There was a demurrer to the complaint upon the ground that the facts stated failed to show a cause of action. The demurrer was overruled, and thereupon the defendant filed its answer. The answer set up the following defenses: First. A denial of the trespass complained of. Second. That the board was created by the act of the legislature of the state of Arkansas for the purpose of building and repairing levees in Chicot county; that the defendant caused the levee to be built on plaintiffs' premises, but that the damages were duly assessed in accordance with the law at the sum of $1; and that in fact plaintiffs' lands were enhanced in value by the building of the levee in a sum greater than any damage done. Third. The plea of the statute of limitations of one year, and also of three years. There was a trial by jury, who assessed the plaintiffs' damages as follows: For damage to cultivated lands on account of excavations, $1,568; for damage to timber lands, $224; for cutting new ditch, $700; for damage to land on account of obstruction to drainage, $500; for destruction of house, $50,—and on this verdict judgment was entered. The plain-

tiffs entered a remittitur for the $500 allowed for the obstruction to drainage, because no claim was made for it in the complaint.

The demurrer raises two principal questions:   First, that the act creating the board of levee inspectors confers no corporate powers upon the board, and does not authorize a suit to be brought against it; second, that the levee district would not be liable in any event, for the reason that in all the original Louisiana territory there is a servitude upon lands bordering upon the Mississippi river, which justifies the taking of land for a public levee without making any compensation therefor.

While it is true that the act does not in express terms say that the board of levee inspectors shall be a body corporate and subject to suit, it confers upon the board all the powers of a corporation.   It is authorized to locate, build, and repair levees, and for that purpose condemn lands; to employ engineers and such other agents, attorneys, and employés as may be necessary to carry into effect the objects of the act; to pay them for their services; to let contracts for building or repairing levees; to fix and determine the rate of taxation to be levied on the lands in the levee district; to require bond from the contractors; to have general supervision of the levees; and, in short, to do everything necessary for the protection of the lands in that district from overflow.   These powers are the principal attributes of **a** corporation, and, although the statute does not in terms declare it to be a corporation, it is sufficient if that intent clearly appears. Whenever the powers conferred upon a board are of such a character that they cannot be performed or made effective without the exercise of the right to sue and to be sued, that right is necessarily implied.   Judge Dillon, in his work on Municipal Corporations, says:

"Although corporations in this country are created by statute, still the rule is here also settled that not only private corporations aggregate, but municipal or public corporations, may be established without any particular form of words or technical mode of expression, though such words are commonly employed.   If powers and privileges are conferred upon a body of men, or upon the residents or inhabitants of a town or district, and if these cannot be exercised and enjoyed, and if the purposes intended cannot be carried into effect, without acting in a corporate capacity, a corporation is, to this extent, created by implication.   The question turns upon the intent of the legislature, and this can be shown constructively as well as expressly.   This is well illustrated in a case in Massachusetts, where the question was whether the plaintiffs were a corporate body with power to sue.   They were not incorporated expressly.   But by statute the inhabitants of the several school-districts were empowered, at any meeting properly called, to raise money to erect, repair, or purchase a school house, to determine its site, etc.; the majority binding the minority.   The cause was argued by able counsel, and after several consultations the judges of the supreme judicial court finally agreed in the opinion that the plaintiffs possessed sufficient corporate powers to maintain an action on a contract to build a school house, and to make to them a lease of land.   But the intention of the legislature, where it is sought to show that a corporation has been created by implication, must satisfactorily appear." Dill. Mun. Corp. (4th Ed.) § 43.

And see, to the same effect, 1 Thomp. Corp. §§ 1, 2.

This question came before the supreme court of California, and that court held that an act of the legislature requiring the supervisors of a county, upon certain conditions, to create a levee district, and

providing the details by which the work should be effected, makes the levee district thus organized by the board of supervisors a corporation, and a public corporation, although the act does not in terms declare it a corporation. Dean v. Davis, 51 Cal. 406, 411. And see, to the same effect, Elmore v. Commissioners, 135 Ill. 269, 25 N. E. 1010; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 576. This is the construction put upon the act by the board itself, for the record shows that it has brought and maintained suits in its corporate name.

Whether in all the original Louisiana territory there is a servitude upon lands bordering upon the Mississippi river which justifies the taking of the land for a public levee without compensation, it is not necessary to determine in this action. Upon this general subject, see Eldridge v. Trezevant, 160 U. S. 452, 16 Sup. Ct. 345. It is enough to say that there is nothing in the record before us to show, or tending to show, that the state of Arkansas, or any department of its government, has ever claimed or asserted this right. If the right exists, it seems never to have been the policy of the state to assert it. On the contrary, the act under which the levee which gives rise to this suit was built makes provision for awarding to the landowner on whose land the levee is located and built such damages as "six land owners of the county * * * may deem just and right." We would not be justified in forcing on the state of Arkansas a policy inconsistent with that which has characterized all her legislation on this subject, and inconsistent with the provisions of the act which created this board of levee inspectors. The claim now put forward for the first time by this board finds no sanction either in the constitution or the laws of the state. Assuming, but not deciding, that, if there had been no legislation on the subject, such a servitude would exist, it is clearly not a right that is paramount to the constitution and laws of the state, and which the state is bound to exercise.

The demurrer to the complaint was properly overruled.

In determining the other questions in the case, it is important to bear in mind that this action is not for the taking of land upon which to construct a levee. The land upon which the levee was constructed was condemned, and the levee originally located and built in 1887. In 1892–93 it became necessary, for the protection of the land in the levee district from overflow, to increase the width and height of the levee. The earth and other materials necessary for this purpose were taken from the plaintiffs' land inside of the levee, and outside of the land originally condemned for the right of way of the levee.

Obviously the damages resulting to the plaintiffs from this action of the board were not covered by the assessment of damages for the land originally taken for the levee. If the board could have proceeded under the act to condemn the additional land necessary to increase the width and height of the levee, it did not do so. It, or others acting by its authority, entered upon the plaintiffs' land and did the damage complained of. We have no difficulty in holding that, in all the board did in the premises, it was acting in its corporate capacity, and is liable in its corporate capacity for the property taken, damaged, or destroyed. Levee

boards in the valley of the lower Mississippi are necessarily invested with large powers and discretion. It frequently occurs that levees have to be repaired, strengthened, or increased in height with the greatest celerity in order to prevent widespread damage to property, and destruction of animal, and sometimes human, life. In such emergencies time cannot be taken to condemn in a formal way the property and materials essential to be used to prevent such disasters; but the action of the board in such cases is its corporate act,—as much so as if it had proceeded in the most deliberate and formal manner to have the property condemned to the use to which it was appropriated. Such action is as much a part of the board's official duty as the original location and construction of the levee. The board's action in this case was not, therefore, extraofficial. But the mode of assessing the damages for property taken or damaged to meet such emergencies is necessarily different from that prescribed by statute in the case of the original location of the levee. There is no provision of the act authorizing the board to take land, timber, or earth, or to make excavations on land beyond the limits of the land condemned for the levee as originally laid off and constructed. Unquestionably, it is the existing policy of the state and of the act in question to compensate the owner for land taken for the original construction of the levee; and it is equally clear that after that has been done, and the levee built, the land, earth, and other materials necessary for maintaining, repairing, and strengthening the levee cannot be taken ad libitum outside of the limits of the right of way originally condemned, without making compensation to the owner for the value of the same, or the damages thereby sustained. The constitution of the state declares that:

"The right of property is before and higher than any constitutional sanction, and private property shall not be taken, appropriated or damaged for public use without just compensation therefor." Const. Ark. art. 2, § 22.

This constitutional provision is applicable to this case, and entitles the plaintiffs to "just compensation" for so much of their property as was "taken, appropriated or damaged" for the public use mentioned.

It is assigned for error that the board was not permitted to show the benefits which accrued to the land of the plaintiffs in consequence of the acts complained of. But it is well settled that mere general or public benefits, or such benefits as result to the public at large,—as, for illustration in this case, to the other lands within this levee district,—cannot be charged to the owner of the land which is taken for the public use. "In estimating either the injuries or benefits," says Judge Cooley, "those which the owner sustains or receives in common with the community generally, and which are not peculiar to him, and connected with his ownership, use, and enjoyment of a particular parcel of land, should be altogether excluded." Cooley, Const. Lim. § 698; Chiles v. New Haven & N. Co., 133 Mass. 253; Sullivan v. Railroad Co., 51 N. J. Law, 518, 18 Atl. 689; Railroad Co. v. Currie, 62 Miss. 506.

There was an offer to prove some special benefits resulting to

the plaintiffs from the action of the board complained of, which was rejected,—upon what ground the record does not disclose; but a sufficient ground to support the ruling of the lower court is found in the fact that the board set up no such claim or defense in its answer. Aside from the general denials of the answer, all that is found on the subject of damages is contained in paragraph 2 of the substituted and amended answer, which reads as follows:

"(2) Said board alleges that it was created under the act of March 20, 1883, for the purpose of building and repairing levees in Chicot county, Arkansas; that it caused the line of levee to be built on the plaintiffs' premises described in the complaint in the year 1887; that the damages done to said premises by reason thereof were duly assessed in accordance with law in the year aforesaid at the sum of one dollar; that, in fact, the plaintiffs' lands were enhanced in value by the levee built thereon in a sum greater than any damage done by the building thereof."

Obviously the benefits here attempted to be set up are the benefits which the plaintiffs' lands received in common with the other lands within the levee district by the original construction of the levee; and, moreover, if the averment could be considered to relate to special benefits, they are special benefits resulting from the original construction of the levee, which were considered and disposed of in the condemnation proceedings taken in 1887, and are quite foreign to this case. Nothing is said about any special benefits accruing to the plaintiffs or their land by reason of the acts done by the board for which this suit is brought. If the defendant relied upon any such defense, it should have set it up in its answer.

One of the pleas of the statute of limitations has been abandoned, and, as to the statute of three years, there being conflicting evidence as to when the cause of action arose. the court below properly submitted the issue to the jury, and its finding is conclusive. It would serve no useful purpose to examine in detail all the requests for instructions, and the numerous assignments of error arising upon exceptions. The principal and vital questions in the case have been considered and decided. A careful consideration of the whole record satisfies us that there was no substantial error committed in the trial of the case, and that the judgment is right, and should be affirmed.