(December 4, 1922.)

SHEPHERD MORGAN, on Behalf of Himself and All Others Similarly Situated, Appellant, v. INDEPENDENT SCHOOL DISTRICT No. 26–J in Elmore and Owyhee Counties, Idaho, a Municipal Corporation, and RILEY F. CASE, EDWARD W. ANDRUS, JOHN McCABE, CURTIS L. SWAN, CHRIS GJORDING and MRS. JOSEPHINE ROBERTSON, as the Board of Trustees Thereof, Respondents.

[211 Pac. 529.]

JOINT INDEPENDENT SCHOOL DISTRICT — ORGANIZATION OF — MUNICIPAL CORPORATIONS—REQUISITES OF DE FACTO CORPORATION—COLLATERAL ATTACK—LAPSE OF TIME.

1. Where a joint common school district is located partly within two counties, under the provisions of C. S., sec. 872, the territory comprised in such district may be formed into a joint independent

school district, for which purpose the same preliminary steps must be taken, and the same course pursued as in the organization of an independent school district lying wholly within one county, and the necessary organization proceedings may be had within the district as a whole and under the supervision of the board of commissioners of either county.

2. *Held,* that respondent district is a valid, legally existing joint independent school district.

3. The requisites of a *de facto* municipal corporation are: a law under which such a corporation as it purports to be might lawfully be organized, an attempt to organize thereunder, and actual user of the corporate franchise.

4. When the creation of a public corporation, municipal or *quasi*-municipal, is authorized by statute, and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding. The validity of the incorporation can be determined only in a suit brought for that purpose in the name of the state or by some individual under the authority of the state who has a special interest which is affected by the existence of the corporation.

5. Under C. S., sec. 839, the regularity of the organization of a joint independent school district cannot be questioned in a collateral proceeding or otherwise after a period of six months from the date of the entry of the order establishing such district.

APPEAL from the District Court of the Third Judicial District, for Elmore County. Hon. Raymond L. Givens, Judge.

Action to enjoin issuance of bonds and levy of taxes. Judgment for defendants. *Affirmed.*

W. H. Langroise, for Appellant.

Under C. S., sec. 834, providing for the organization of independent school districts, the two jurisdictional requisites for the creation of such districts are, (1) filing with the board of county commissioners the requisite petition,

Publisher's Note.

4. Collateral attack on legality of municipal organization, see notes in 3 Ann. Cas. 242; 11 Ann. Cas. 1060; Ann. Cas. 1913A, 592.

.and (2) the submission of the question to a vote of the electors. (*Pickett v. Board,* 24 Ida. 200, 133 Pac. 112.)

There can be no *de jure* or *de facto* corporation until these jurisdictional requisites are complied with. (*City of Wardner v. Pelkes,* 8 Ida. 333, 101 Am. St. 201, 69 Pac. 64; *People v. Town of Linden* (Cal.), 40 Pac. 115.)

The corporate existence of a company which is neither a *de facto* nor a *de jure* corporation may be questioned in a private action to which it is a party. (*Martin v. Deetz,* 102 Cal. 55, 36 Pac. 368; *Huber v. Martin,* 127 Wis. 412, 115 Am. St. 1023, 105 S. W. 1031, 3 L. R. A., N. S., 653; *Dunbar v. Board,* 5 Ida. 407, 49 Pac. 409.)

Perky &˙ Brinck and Harry Keyser, for Respondents.

The user by the district of the functions and powers of an independent school district for the period of more than four years, its recognition by the two counties as such independent school district, its recognition by the state board of education as such, constitute it a *de facto* corporation, the organization of which cannot be attacked except in a direct proceeding in *quo warranto.* If in addition thereto a *bona fide* attempt to organize under the law be necessary, such *bona fide* attempt affirmatively appears. (14 C. J. 214; Dillon, Munic. Corp., sec. 67; McQuillin, Munic. Corp., sec. 151; *Nelson v. School District,* 181 Iowa, 424, 164 N. W. 874; *Gilkey v. Howe,* 105 Wis. 4, 81 N. W. 120, 49 L. R. A. 483; *Continental Trust Co. v. Toledo etc. R. Co.,* 82 Fed. 642; *People v. Bowman,* 247 Ill. 276, 93 N. E. 244; *State v. Leatherman,* 38 Ark. 81; *State v. Harris,* 102 Minn. 340, 12 Ann. Cas. 260, 113 N. W. 887, 13 L. R. A., N. S., 1193; *Hamilton v. San Diego County,* 108 Cal. 273, 41 Pac. 305; *People v. Ellis,* 253 Ill. 369, Ann. Cas. 1913A, 589, 97 N. E. 697.)

When the fact of the existence of a corporation *de facto* is established, it is the settled law that its existence *de jure* cannot be collaterally attacked; that is, by any other than the state under whose law its formation was sought, and

then only in a direct proceeding.   (*Kardo Co. v. Adams,* 231 Fed. 950; *Hufford v. Herrold,* 189 Iowa, 853, 179 N. W. 53; *Dunne v. Burbank,* 190 Iowa, 67, 179 N. W. 969; *Connine v. Smith,* 190 Mich. 631, 157 N. W. 450.)

Upon grounds of public policy, the organization of municipal corporations of long standing cannot be questioned, and even the state under such circumstances is estopped from questioning the validity of the organizations. (*People v. Alturas County,* 6 Ida. 418, 55 Pac. 1067, 44 L. R. A. 122; *Pickett v. Board,* 24 Ida. 200, 133 Pac. 112; *State v. Carr,* 191 Fed. 257; *State v. St. Louis County,* 117 Minn. 42, 134 N. W. 299; *State v. Willis,* 18 N. D. 76, 118 N. W. 820; *Simpson v. Stoddard County,* 173 Mo. 421, 31 S. W. 700; *State v. McLean County,* 11 N. D. 356, 92 N. W. 385.)

BUDGE, J.—This is an action to enjoin the issuance of bonds and the levy of taxes by respondent district. The cause was tried to the court without a jury. The court made certain findings of fact and conclusions of law, and entered judgment in favor of respondent, from which this appeal is taken.

The court found that appellant lives in Owyhee county, within the boundaries of respondent district, and owns land and other property therein, subject to taxation; that he is an elector, qualified to vote at any election hereinafter mentioned; that respondents Case, Andrus, McCabe, Swan, Gjording and Robertson are, and since August, 1917, they and their predecessors in office have been, the trustees of respondent district; that said district lies partly within Elmore county and partly in Owyhee county; that the territory now comprised in respondent district was duly organized in 1915 as a joint common school district, designated as joint school district No. 26–J, and duly and legally functioned as such until the summer of 1917; that during June and July, 1917, a petition was circulated throughout said district and was signed by more than one-fifth of those within said district who were qualified to vote at school elec-

tions, praying that an election be called to determine whether said territory should be organized into an independent school district. Said petition was not presented to the board of county commissioners of Owyhee county, but was presented to the board of county commissioners of Elmore county, which latter board, at a meeting duly and regularly held, considered said petition, found that the requisite jurisdictional facts appeared therein and existed, and that no protest was on file with said board, and thereupon ordered that the question be submitted to a vote of all the electors within said district who were authorized to vote for the levy of taxes and issuance of bonds, such election to be held on August 11, 1917, at the schoolhouse in said district, situated in Glenns Ferry, Elmore county. Due and legal notice of such election was given to all qualified electors residing within said district, both in Elmore and Owyhee counties, and said election was held at the time and place appointed. Qualified electors throughout the district, from both counties appeared and voted, and all of said electors so desiring, whether residing in Elmore or Owyhee county, and within said district, were permitted to and did vote, 45 votes being cast in favor of, and 21 against, the creation and organization of an independent school district. The election returns were duly and regularly certified to the board of county commissioners and the superintendent of public instruction of Elmore county and to the *ex-officio* clerk of the board of county commissioners and superintendent of public instruction of Owyhee county. Thereafter, on September 17, 1917, the board of county commissioners of Elmore county, pursuant to due and legal notice, met and received and canvassed the returns of said election, found that said election had duly and legally authorized the organization of respondent district, ordered that the territory comprised therein be declared an independent school district, designated "Independent School District Glenns Ferry No. 26-J in Elmore County," and appointed six trustees therefor, some of whom resided in Elmore and some in Owyhee county. Said district has

since functioned under the name of "Independent School District No. 26–J in Elmore and Owyhee Counties," the letter "J" signifying that the district is a joint district.

The board of trustees met and organized as such on September 26, 1917, since which time they and their successors have continued to function in all respects as, and to exercise all the rights of, a board of trustees of an independent school district, and through them the district has entered into contracts, employed principals, assistants and other teachers, levied taxes, handled school funds, issued warrants, defrayed expenses and paid bills, in all respects as a duly, regularly and legally organized joint independent school district. Each year since its organization, respondent district has made an annual levy for school purposes as an independent school district and has certified each of said levies to the board of county commissioners of both Elmore and Owyhee counties, both of which boards in every instance accepted such levies and incorporated the same in the general levies fixed by them. The taxes for each year, in each county, were figured and collected on the basis of levies certified by the trustees of said district, upon all taxable property situated in the portion of said district located in each county, and the tax money produced thereby was regularly remitted to the district. The board of county commissioners, auditor, assessor, tax collector, treasurer and superintendent of public instruction in both counties, as well as the state board of education, have at all times since its organization treated and recognized respondent district as a duly, regularly and legally organized independent school district and the residents and property owners within the boundaries of the district have at all times acquiesced in the acts of the trustees and have not questioned the capacity of said independent school district to act as such prior to the commencement of this suit.

On July 18, 1919, the board of trustees passed a resolution calling an election for the purpose of determining whether the district should issue bonds in the sum of $26,000, for the purpose of providing and improving school-

houses, grounds and furniture, apparatus and fixtures for said district. Subsequently such election was held, resulting in the authorization of the issue of said bonds. On April 20, 1920, a second resolution was passed, calling an election to determine whether additional bonds in the sum of $40,000 should be issued, for the same purposes. This election also resulted in authorizing the issue of said bonds.

In its conclusions of law, the court found that respondent district is a valid, legally existing joint independent school district; that the trustees above named are the duly elected, qualified and acting board of trustees of said district; that the bond issues above mentioned were duly and regularly authorized and made; that the taxes levied by the board of trustees were duly and regularly made and of full force and effect; that appellant is not entitled to the relief prayed for in his complaint, and the complaint should be dismissed.

Appellant assigns as error each of the conclusions of law made by the court, that the court erred in adjudging that respondent district is a duly and legally existing joint independent school district, that the trustees above named are the duly elected, qualified and acting board of trustees of said district, and in dismissing appellant's complaint. There are two questions presented by appellant's assignments of error, first, whether respondent district was properly organized, and second, whether it is a corporation *de facto* if not *de jure.*

C. S., sec. 872, provides, "A joint independent school district . . . . may be formed from territory . . . . belonging to two or more contiguous counties. For the purpose of organizing such joint districts the same preliminary steps must be taken, and the same course pursued as in the organization of like districts lying wholly within the boundaries of a single county. . . . . The proceedings for its formation shall be had in each county or district interested: Provided, That the school census, the record of attendance at school, the assessing of property, the collection of taxes, and all acts, which, from their nature, shall be separately kept, shall be kept and done, and the report thereof made

as if each portion of said district were an entire district in the respective counties. . . . . ''

The proceedings for the formation of an independent school district lying wholly within the boundaries of a single county are set forth in C. S., sec. 834, and were substantially followed by respondent district under the auspices of the board of county commissioners of Elmore county. The statute (sec. 872, *supra*) provides that the same preliminary steps must be taken, and the same course pursued in the organization of joint districts as in the organization of districts lying wholly within one county, and this implies that a petition shall be filed with the board of county commissioners, an election held pursuant to notice, and an order made declaring the district organized, designating it by name and number, and appointing trustees. The law does not contemplate a duplication of the steps necessary to create a joint district within each county, the result of which could only be a separate organization in each county, and no single organization having control over the entire joint district.

In other words, the law is designed to admit of the creation of a joint independent school district, and this salutary end is not achieved by separate organization in each county within which territory sought to be included in such joint district is located. It must also be borne in mind that the territory now comprised in respondent district had been previously organized as a joint common school district, and that this is not a case where two separate but contiguous districts in adjoining counties are seeking to become consolidated. The former joint common school district sought merely a reorganization as an independent school district, and if the provision in C. S., sec. 872, to the effect that ''the proceedings shall be had in each county *or district* interested'' means anything, it is that where a common school district already exists proceedings may be had in that district and not necessarily in each county within which a portion of the district may lie.

The purpose of the statute is to permit the legal school electors of any given territory to create a school district, by an election upon a petition by one-fifth of said electors within the boundaries of the proposed district, and called pursuant to proper notice. To the board of county commissioners is committed the duty of ascertaining that these preliminary steps are in fact properly taken, and where they are the district is thereby created, and the board has no alternative but to make an order declaring that fact, designating the name and number of the district and appointing its trustees. Power is vested in the electors to determine whether the district should be created (*Pickett v. Board of Commrs.,* 24 Ida. 200, 133 Pac. 112), and the important consideration is that the will of the electors be given effect. Where a district lies within two counties, the purpose of the statute is satisfied by permitting the necessary organization proceedings to be had within the district and under the supervision of the board of commissioners of either county.

We conclude, therefore, that the court did not err in its finding that respondent district is a valid, legally existing joint independent school district. Nevertheless, we will consider the second proposition, as to whether respondent district is a corporation *de facto* although not *de jure,* the existence of which is not subject to collateral attack.

It is undisputed that the electors of respondent district made a *bona fide* effort to organize a joint independent district, under a law authorizing such organization, and that the district has claimed and exercised the rights, privileges and powers of a *de jure* independent school district, both in Elmore and Owyhee counties.

In *Nelson v. Consolidated Independent School Dist.,* 181 Iowa, 424, 164 N. W. 874, at 876, it is said:

"A school district is, under our statutes, a public corporation, and as all parties, in undertaking to organize the district in controversy, and in selecting officers thereof, acted in good faith, the Consolidated Independent District of Troy Mills is a *de facto* corporation. To constitute a

corporation *de facto* three things are necessary: (1) Some law under which a corporation with powers assumed may lawfully have been created: (2) a colorable and *bona fide* attempt to perfect an organization under such a law; and (3) user of the rights claimed to have been conferred by the law—that is, of the corporate franchise. (*Tulare Irr. Dist. v. Shepard,* 185 U. S. 1, 22 Sup. Ct. 531, 46 L. ed. 773; *Pierce v. Town of Lutesville,* 25 Mo. App. 317; *Evans v. Anderson,* 132 Minn. 59, 155 N. W. 1040.) . . . .

"To permit the existence of public corporations to depend on private litigation would be inimical to the welfare of the community. Experience has demonstrated that irregularities of more or less importance are to be found in the organization of nearly every incorporated body. Technical accuracy is not to be expected. The legal existence of a public corporation cannot be questioned without causing disturbance more or less serious, and if the regularity of its organization can be kept open to inquiry indefinitely, no one can ever be sure that any of the taxes levied to meet its expenses or the contracts necessarily entered into by it would be valid and enforceable. The transaction of public business might be blocked by private litigation commenced at the will or whim of any citizen. While there has been an honest effort to comply with the law in the organization of a corporation, as a school district, and the officers selected proceed to execute the powers thereof, every presumption should be, and is, in favor of the regularity of such organization, and it is to be regarded as valid, save when assailed by the state on information in the nature of *quo warranto.*"

The requisites of a *de facto* municipal corporation are: a charter or general law under which such a corporation as it purports to be might lawfully be organized, an attempt to organize thereunder, and actual user of the corporate franchise. (*Coe v. City of Los Angeles et al.,* 42 Cal. App. 479, 183 Pac. 822; *Town of Constitution v. Chestnut Hill Cemetery Assn.,* 136 Ga. 778, 71 S. E. 1037; *City of Salem ex rel. Roney v. Young,* 142 Mo. App. 160, 125 S. W. 857; *Lang v. City of Bayonne,* 74 N. J. L. 455, 122 Am. St. 391,

12 Ann. Cas. 961, 68 Atl. 90, 15 L. R. A., N. S., 93; *Devlin v. Wilson,* 88 N. J. L. 180, 96 Atl. 42; *City of Carthage v. Burton,* 51 Tex. Civ. App. 195, 111 S. W. 440; *Wilson v. Carter* (Tex. Civ. App.), 161 S. W. 411.) A municipal corporation *de facto* may exist where it has assumed under color of authority for some time the powers of a public corporation. (*Fisher v. Pioneer Const. Co.,* 62 Colo. 538, 163 Pac. 851.) A municipality created under an unconstitutional charter is a *de facto* corporation. (*City of Albuquerque v. Water Supply Co.,* 24 N. M. 368, 5 A. L. R. 519, 174 Pac. 217.) Where there is a *de facto* municipality, objection that there is no legal municipality is unavailing. (*Village of Catlin v. Tilton,* 281 Ill. 601, 117 N. E. 999.)

Moreover, the rule is well established that when the creation of a public corporation, municipal or *quasi*-municipal, is authorized by statute, and a corporation has been organized under the color of such authority, its corporate existence cannot be inquired into by the courts in a collateral proceeding. The validity of the incorporation can be determined only in a suit brought for that purpose in the name of the state or by some individual under the authority of the state who has a special interest which is affected by the existence of the corporation. (*People v. Ellis,* 253 Ill. 369, Ann. Cas. 1913A, 589, and note at 592, 97 N. E. 697.)

In Dillon on Municipal Corporations, 5th ed., sec. 67, the learned author says: "Where a reputed corporation is acting under forms of law, unchallenged by the state, neither the nature nor the extent of any illegality in the organization can affect the existence of the reputed organization."

It was held in *Board of Education v. Berry,* 62 W. Va. 433, 125 Am. St. 975, 59 S. E. 169, that where a municipal corporation exists *de facto,* it may exercise the powers assumed, and the question of its having a right to exercise them can be raised only by the state. (See, also, *Coe v. City of Los Angeles, supra; City of Albuquerque v. Water Supply Co., supra;* and *Vanover v. Dunlap,* 172 Ky. 679, 189 S. W. 915.) In the latter case, the proceedings neces-

sary to the incorporation of a town of the sixth class were all complied with, except that the petition was not filed twenty days before term. It was held that the town was a *de facto* corporation, and its organization was not subject to attack, except by a direct proceeding by the state.

In *People v. Bowman,* 247 Ill. 276, 93 N. E. 244, it was held that: "The regularity of the organization of a municipal corporation cannot be questioned in proceedings to collect taxes levied by the corporation, though the objection goes to the jurisdiction of the tribunal through whose agency the organization is effected."

There seems to be a general unanimity among the courts upon the proposition that where the existence of a municipal corporation is not questioned by the state, it cannot be brought in issue by a private individual in a collateral proceeding. (*State v. Several Parcels of Land,* 78 Neb. 703, 111 N. W. 601; Id., 80 Neb. 11, 113 N. W. 810; *Stout v. St. Louis, I. M. & S. R. Co.,* 142 Mo. App. 1, 125 S. W. 230; *Wright v. Phelps,* 89 Vt. 107, 94 Atl. 294; *Village of Catlin v. Tilton, supra; Merrell v. City of St. Petersburg,* 74 Fla. 194, 76 So. 699; *Hamilton v. San Diego et al.,* 108 Cal. 273, 41 Pac. 305; *Fractional Dist. No. 1 v. Joint Board etc.,* 27 Mich. 3; *Stuart v. School Dist.,* 30 Mich. 74; *State v. Leatherman,* 38 Ark. 81.) And this court has heretofore recognized the existence of *de facto* private corporations (*Fairview Investment Co. v. Lamberson,* 25 Ida. 72, 136 Pac. 606; *Henry Gold Min. Co. v. Henry,* 25 Ida. 333, 137 Pac. 523), as well as *de facto* municipal corporations. (*Pickett v. Board of Commrs., supra; People v. Alturas County,* 6 Ida. 418, 55 Pac. 1067, 44 L. R. A. 122.)

It is apparent, therefore, that respondent district is at least a corporation *de facto,* and that the regularity of its organization cannot be questioned in this proceeding, nor in any proceeding after a period of six months from the date of the entry of the order establishing such district. (C. S., sec. 839; *Ditzel v. Evergreen Highway Dist.,* 32 Ida. 692, 187 Pac. 269.)

From what has been said it follows that the judgment of the trial court should be affirmed, and it is so ordered. Costs are awarded to respondents.

Rice, C. J., and Dunn, J., concur in conclusion reached.

McCarthy, J., concurs.