(No. 5602.   January 26, 1931.)

JAMES TELFER, IRVIN PAYNE, LEE ELLIOTT, JOHN HURST, REUBEN CROSS and RAY FRIPP, Appellants, v. SCHOOL DISTRICT No. 31 OF BLAINE COUNTY, IDAHO, and Its Trustees, T. A. BAPTIE et al., B. P. THAMM, County Auditor of Blaine County, Idaho, and EMMA REED, County Treasurer of Blaine County, Idaho, Respondents.

[295 Pac. 632.]

A. F. James, for Appellants.

276

J. G. Hedrick, for Respondents.

McNAUGHTON, J.—This is an action in which appellants seek to obtain a judgment ·decreeing that their lands are not within or part of School District No. 31, and decreeing them to be part of School District No. 25, formerly

School District No. 42, all in Blaine county, Idaho; and enjoining the trustees of School District No. 31 from levying taxes against their lands, and also the county officials from extending against their lands any levies made by School District No. 31.

For this purpose the complaint alleges facts which show that originally and prior to June 20, 1911, their lands were a part of School District No. 42; that on June 20, 1911, the board of commissioners of Blaine county, pursuant to a defective petition, entered an order creating District No. 13, composed entirely of territory within what then was and theretofore had been District No. 42, and including the lands of plaintiffs. The complaint affirmatively states many omissions in the preliminary proceedings required by the laws of this state to authorize the commissioners to create school districts, and it is claimed this order of the board creating District No. 13 was null and void for want of jurisdiction in the county commissioners.

It is alleged that another District No. 13 was created by order of the board of commissioners on July 22, 1919. It is also alleged that prior to October 16, 1919, the county superintendent of Blaine county filed with the commissioners certain petitions of residents of new District No. 13, and Districts Nos. 14, 15 and 26, asking that said districts be consolidated into a school district, and that residents of Districts No. 14 and No. 26, prior to said date, petitioned that "the School District on West Fork of Fish Creek that recently lapsed," (apparently the territory of the original District No. 13) be included in the new consolidated district. On October 16, 1919, the prayer of the petitions of the residents of Districts Nos. 13, 14, 15 and 26 was granted, and on the 14th of April, 1920, the prayer of the petitions of the residents of Districts No. 14 and No. 26, to include in the proposed new school district that territory on West Fish Creek, which it was claimed had recently lapsed, was granted. That is, as we understand the complaint, Districts Nos. 13, 14, 15 and 26 were on October 16, 1919, consolidated by order of the board into a district designated as District No.

31, and on the 14th of April, 1920, the territory on the West Fork of Fish Creek, comprising 68 sections, and described by metes and bounds, was included in or annexed to District No. 31. Also that plaintiffs' lands, neither the extent nor description of which is set forth in the complaint, were within this territory and covered by the order of the board dated April 14, 1920, and thereby made a part of District No. 31. The complaint states omissions and defects in these petitions relative to the inclusion of these Fish Creek lands sufficient to show lack of authority in the board of county commissioners to lawfully include them in District No. 31.

Under our school laws the county commissioners had general jurisdiction to enter the order upon proper preliminary steps being taken.

It further appears that in every case the petitioners were acting in good faith under statutes which, if sufficiently complied with, authorized the county commissioners to enter each and all the orders complained of; that the commissioners, in good faith, entered the orders from ten to twenty years ago; that pursuant to the orders of the 16th of October, 1919, and of the 14th of April, 1920, what is known as District No. 31 came into existence, with definite boundaries extending over and including plaintiffs' lands, and has since then existed as a political subdivision of the state, performing all the duties and exercising all the powers over all of said lands which the state has conferred upon regularly organized school districts.

Defendants demurred upon the grounds, among others: 1. That the complaint failed to state a cause of action. 2. That plaintiffs did not have legal capacity to sue. The trial court sustained the demurrer upon the first ground. Plaintiffs refused to plead further and judgment of dismissal was entered, from which judgment this appeal is prosecuted.

The appellants assign as error the sustaining of the demurrer to the complaint by the trial judge, and the entry of judgment of dismissal.

■ We are concerned only with the order and judgment of the trial judge, not the grounds upon which the ruling was made. (*Gagnon v. St. Maries Light & Power Co.*, 26 Ida. 87, 141 Pac. 88; *Feehan v. Kendrick*, 32 Ida. 220, 179 Pac. 507; *Wormwood v. Brown, ante*, p. 125, 294 Pac. 331. In *Gagnon v. St. Maries, etc., supra*, the court said:

"It is also true that if the demurrer was good on any ground stated, it would be the duty of this court to sustain the trial court, even though he sustained the demurrer on an erroneous ground."

It is claimed in this court on behalf of the respondents that District No. 31 is and for over ten years has been at least a *de facto* corporation, exercising the powers and duties of such political subdivision of the state within its well-defined territorial limits, including the lands of the appellants; that the appellants have not the right to question its legal existence and entity by injunction proceedings against its officers; that such matters may be inquired into only by the state in proceedings in the nature of *quo warranto*.

This question was considered by this court in *Morgan v. Independent School Dist.*, 36 Ida. 372, 211 Pac. 529. In the opinion in that case the court, after reviewing the authorities, adopted the view announced by the Iowa court in *Nelson v. Consolidated Ind. School Dist.*, 181 Iowa, 424, 164 N. W. 874, as follows:

"'A school district is, under our statutes, a public corporation, and as all parties, in undertaking to organize the district in controversy, and in selecting officers thereof, acted in good faith, the Consolidated Independent District of Troy Mills is a *de facto* corporation. To constitute a corporation *de facto* three things are necessary: (1) Some law under which a corporation with powers assumed may lawfully have been created: (2) a colorable and *bona fide* attempt to perfect an organization under such a law; and (3) user of the rights claimed to have been conferred by the law—that is, of the corporate franchise. (*Tulare Irr. Dist. v. Shepard*, 185 U. S. 1, 22 Sup. Ct. 531, 46 L. ed. 773; *Pierce v. Town of*

*Lutesville,* 25 Mo. App. 317; *Evans v. Anderson,* 132 Minn. 59, 155 N. W. 1040.) . . . .

" 'To permit the existence of public corporations to depend on private litigation would be inimical to the welfare of the community. Experience has demonstrated that irregularities of more or less importance are to be found in the organization of nearly every incorporated body. Technical accuracy is not to be expected. The legal existence of a public corporation cannot be questioned without causing disturbance more or less serious, and if the regularity of its organization can be kept open to inquiry indefinitely, no one can ever be sure that any of the taxes levied to meet its expenses or the contracts necessarily entered into by it would be valid and enforceable. The transaction of public business might be blocked by private litigation commenced at the will or whim of any citizen. While there has been an honest effort to comply with the law in the organization of a corporation, as a school district, and the officers selected proceed to execute the powers thereof, every presumption should be, and is, in favor of the regularity of such organization, and it is to be regarded as valid, save when assailed by the state on information in the nature of *quo warranto.*' "

This rule is recognized and followed by the federal court in this district, In *Oregon Short Line R. Co. v. Kimama Highway Dist.,* 287 Fed. 734, Judge Dietrich said:

"The other contention is that, though irregularly organized, the district is to be deemed a *de facto* corporation, and its legal existence cannot be called into question by a private person in an action of this character. In that respect it was stipulated at the trial that since February, 1920, the defendant district has 'been functioning as a highway district, and holding itself out as a highway district since that time, under color of an organization.' Upon this showing of fact I am inclined to think defendant's position is well taken. The general proposition is considered at length in a decision recently rendered by the Supreme Court of the state in *Morgan v. Independent School District,* . . . . where there may

be found a review of many typical decided cases upon the subject. It is to be borne in mind that this is a collateral attack by a private citizen upon the existence of a public corporation, and that the order assailed was not such an order as the board of county commissioners was without authority to make under any circumstances. If invalid at all, it is not because such an order is entirely beyond the general jurisdiction with which the board is vested, but because certain conditions precedent to the exercise of the power were not complied with."

The rule seems of universal application, but sometimes stated differently. It is said in *Henderson v. School Dist.*, 75 Mont. 154, 242 Pac. 979:

"Thus acquiescence in the exercise of corporate functions, and dealing with the corporation as such over a period of years will estop all persons dealing with the corporation from assailing its legality. (*In re Flemington Borough*, 168 Pa. 628, 32 Atl. 86; *St. Louis v. Shields*, 62 Mo. 247; *Cowell v. Colorado Springs Co.*, 3 Colo. 82; *People v. Maynard*, 15 Mich. 463; *People v. Curley*, 5 Colo. 412; *State v. Westport*, 116 Mo. 582, 22 S. W. 888; *State v. Leatherman*, 38 Ark. 81; *State v. Pell City*, 157 Ala. 380, 47 So. 246; *Board v. Crittenden*, 94 Fed. 613, 36 C. C. A. 418.)"

Mr. Dillon, in his work on Municipal Corporations, 5th edition, sec. 67, says:

"In public affairs where the people have organized themselves, under color of law, into the ordinary municipal bodies, and have gone on, year after year, raising taxes, making improvements, and exercising their usual franchises their rights are properly regarded as dependent quite as much on acquiescence as on the regularity of their origin."

In 1 Cooley on Constitutional Limitation, eighth edition, p. 531, it is said:

"In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the State

as such. Such a question should be raised by the State itself, by *quo warranto* or other direct proceeding.''

Our attention is called to *Smith v. Canyon County, etc.,* 39 Ida. 222, 226 Pac. 1070, wherein, in an attack upon a tax levy, it was held a direct attack might be made by a taxpayer against the organization of the district. The tax levy questioned in that case was the first attempted by the new officials. There was no showing that the alleged school district had ever acted as such prior to the attempted levy. It was not shown to be a *de facto* corporation. The question here was not raised or passed on in that case. It was only claimed that the proceeding should be by appeal from the order of the board creating the district.

It was held the complaint alleged facts showing the order void for want of jurisdiction. The order being void, it was held plaintiff was not limited in his remedy to appeal, but might question a void order by direct action. This rule is recognized as valid. The rule however, does not go to the question raised in this case. The right of a citizen to attack the organization of a public corporation was not raised in that case or passed upon by the court.

Appellants contend there is a distinction between questioning the order of a board of county commissioners creating a school district and an order extending the boundaries of an existing district. The distinction, we think, is without difference so far as the right of a taxpayer to question the entity of the *de facto* corporation is concerned. The order of the board on the 14th of April, 1920, was in reality the organization of District No. 31 as to the 68 sections of land involved. (22 R. C. L. 670; *Evans v. Lewis,* 121 Ill. 478, 13 N. E. 246.)

■ We hold, School District No. 31, having existed, exercising all the functions of a public school district of the state over its present well-defined territory as a public corporation for the past ten years, its legal entity is not subject to attack by a land owner within the district in an injunction proceeding against its officers. It follows the

demurrer was good. The judgment is affirmed, with costs to respondents.

Lee, C. J., Givens and Varian, JJ., and Adair, D. J., concur.