[No. 4277.]

WOOD ET AL. V. CASSERLEIGH.

| 30 | 287 |
| 32 | 511 |

**1. Contracts—Public Policy.**

Before a contract can be declared illegal on the ground that it is against public policy, it must clearly appear that it is obnoxious to the pure administration of justice, or manifestly injurious to the interests of the public.

**2. Contracts—Evidence—Public Policy.**

Where a party collected and came into possession of certain evidence under a contract of employment which in no manner rendered his compensation contingent upon the character of the evidence or the result of any action in which it might be used, a subsequent contract to furnish said evidence to the plaintiffs in an action in consideration of a part interest in whatever judgment might be recovered was not illegal as against public policy.

**3. Same—Ownership.**

Where a party collected and came into possession of certain evidence under a contract of employment by another party, and

his employer having died he entered into a contract on his own behalf to furnish said evidence and prosecute a suit for an interest in whatever judgment might be procured, and he did furnish the evidence and successfully prosecute the suit to judgment, in an action by him to enforce a specific performance of his contract the defendants cannot avail themselves of the defense that plaintiff did not own the evidence, but that it belonged to the estate of his deceased employer, as that is a question solely between plaintiff and the representatives of the estate and with which defendants have no concern.

4. Contracts—Specific Performance.

Where a party contracted with the plaintiffs in an action to furnish evidence, employ counsel and prosecute the suit for an interest in whatever judgment might be procured, and did employ counsel and successfully prosecute the action to judgment, in an action to enforce specific performance of his contract the fact that he did not advance the money to pay all the expenses of the litigation that his contract required him to pay is no defense, no effort having been made to rescind or terminate the contract on account of such default during the pendency of the action.

5. Contracts—Specific Performance—Judgments—Parties.

Where a party contracted with the plaintiffs in an action to employ counsel and prosecute the action for an interest in whatever judgment might be procured, and did successfully prosecute the action to judgment, the contract was an equitable assignment of an interest in the judgment, and in an action to enforce specific performance of the contract the judgment defendants were properly joined as defendants and judgment rendered against them for the amount plaintiff was entitled to recover from the judgment plaintiffs as his part of the judgment recovered under his contract.

6. Contracts—Specific Performance.

Where a party in possession of material evidence contracted with the plaintiffs in an action to furnish said evidence, employ counsel and prosecute the suit for an interest in whatever judgment might be procured, and did employ counsel, and successfully prosecuted the action to judgment, and in making the contract with plaintiffs there were no misrepresentations, concealment or unfairness on his part, and no mistake or omission in the contract, after accepting the benefits of the judgment obtained in their favor, they cannot object to the enforcement of the contract on the ground that the amount agreed to be given

was unreasonable and disproportionate to the expenditures of time and money in procuring the judgment.

**7. Judgments—Descent and Distribution.**

Where a judgment was rendered in favor of the widow and five children of a deceased to be apportioned among them according to their respective interest as heirs of deceased under the laws of descent and distribution in this state, each child would be entitled to a one-tenth interest in the judgment.

**8. Judgments—Liens—Contracts—Specific Performance.**

Where a party contracted with the plaintiffs in an action to furnish evidence, employ counsel and prosecute the suit for an interest in whatever judgment might be procured, and the action was successfully prosecuted to judgment, and in settlement of the judgment the judgment defendants conveyed to plaintiffs certain mining property in part consideration, in an action by the party who contracted with plaintiffs for an interest in the judgment, to enforce his contract, it was not prejudicial error to make a judgment rendered in his favor a lien on the mining property with a provision that the unsatisfied balance should be paid by the defendants in the original judgment.

*Error to the District Court of Arapahoe County.*

Mr. H. L. McNair and Messrs. Thomas, Bryant & Lee, for plaintiffs in error.

Mr. F. J. Mott and Mr. Geo. W. Taylor, for defendant in error.

Mr. Justice Gabbert delivered the opinion of the court.

Plaintiffs in error, Thomas E. and Charles E. Wood, were the owners of an interest in a mining claim then in the possession of, and for a long time operated by, other parties. Their ancestor was one of the locators of these mining premises. For the purpose of having proceedings instituted to recover their interest in this property, they entered into an agreement with defendant in error, which, though inartificially drawn, in substance recited and provided that the latter was then in possession of the

evidence necessary to establish the citizenship of their ancestor, and that in consideration of its production by him, and the prosecution of an action in their behalf upon his part to establish their rights, they were to give him a specified interest in the amount recovered of the parties who had been operating the mining premises, and a like share in any interest which they might recover in such premises.    In pursuance of this agreement, defendant in error employed counsel to prosecute an action on behalf of the Woods, with the result that they recovered judgment for a large sum, and also a decree for an interest in the mining premises in dispute.    The defendant in error, as plaintiff, brought an action against the plaintiffs in error to enforce his contract.    From a judgment in his favor, the latter bring the case here for review.

The first point made by their counsel is, that the contract above referred to is illegal, in that it is contrary to public policy.    This is based upon the assumption that from its own terms, and as disclosed by the record, its manifest tendency was to pervert justice.    It appears that some time prior to the date when the contract in question was entered into, plaintiff had been employed by another party for the express purpose of collecting testimony which would establish the citizenship of their ancestor; that counsel then employed by this party deemed this question of fact the crucial one, and that unless established the Woods could not successfully maintain any action; that plaintiff, in pursuance of this employment, learned that deceased had at one time entered government land, in the state of Kansas, and with this clue, ascertained the court before which he had declared his intention to become a citizen of the United States. It also appears that deceased had been known in Kansas as James Wood.    He had located the prem-

ises in dispute under the name of W. J. Wood, and it was, therefore, necessary to establish that James Wood was the same person as W. J. Wood, the locator. This was shown by parol testimony of parties who knew James Wood in Kansas, in connection with a photograph of W. J. Wood, which had been furnished by one of the defendants. This information, it appears, had been collected or the witnesses had been procured who would testify to the facts above referred to, prior to the time when he entered into the contract with the defendants

Agreements to pay for collecting and procuring testimony of a certain character, to be used in evidence, coupled with the condition that the contractee's right to compensation depends upon the character of the testimony, or the result of the suit in which it is to be used, have been universally condemned by the courts as contrary to public policy, for the reason that such agreements hold out an inducement to commit fraud, or to procure persons to commit perjury. Before, however, a contract can be declared illegal, upon the ground that it is against public policy, it must clearly appear that it is obnoxious to the pure administration of justice, or manifestly injurious to the interests of the public. The usual test to apply in determining these questions is whether the tendency of the contract is evil.—15 Enc. Law, 934. The contract in question does not show upon its face that plaintiff was to procure testimony of any certain character, or furnish sufficient to establish the principal question of fact which was deemed material; but, on the contrary, simply required him to furnish evidence which was then in his possession, and which he had secured prior to the execution of the contract. It appears that plaintiff collected this testimony under a contract with the party by whom he had been employed, which in no manner rendered his

compensation contingent upon the character of the testimony which he had been employed to procure, or the result of any action in which it might be used. On the contrary, for the services thus performed he was paid, or promised, a specific compensation in no manner contingent upon his success. It cannot be said, therefore, that the agreement of the plaintiff to furnish the testimony referred to in the contract, or any act upon his part in securing it, would involve the commission by him or by any other person, of any act having the slightest taint of immorality or which would be obnoxious to the pure administration of justice, or injurious to public interests, and therefore, is not void as against public policy.—*Casserleigh v. Wood,* 14 Colo. App., 265.

The next point made by counsel for defendants is, that plaintiff did not own the evidence which he agreed to furnish. It appears that previous to entering into the contract he was employed by one Peter Finnerty to collect this testimony. After the death of the latter he entered into the contract in his own behalf, and filed a claim against the Finnerty estate. An allowance was made which was afterwards compromised. The defendants are not in a position to raise the question regarding the ownership of the evidence. The estate cannot maintain an action against them on this account. The representatives of deceased have not intervened. No attempt was made to bring them in as parties to the action. The testimony was furnished by the plaintiff as agreed. In such circumstances, whatever the rights of the representatives of deceased may be, is a question solely between the plaintiff and such representatives, and therefore one with which the defendants have no concern.

It is claimed by counsel for defendants that plaintiff is not entitled to a specific performance of his contract, for the reason that he did not advance

the money necessary to carry on the litigation. What-
ever the requirements of the contract may have been
in this respect is immaterial. The suit was com-
menced by counsel employed by plaintiff and prose-
cuted to a successful termination. Counsel thus em-
ployed was paid by him by an assignment of an inter-
est in his contract with the Woods. While the con-
tract may have been unilateral in the first instance,
and specified various matters which plaintiff was re-
quired to perform, its main purpose was to provide
for the prosecution of an action for the recovery of
the interest of the defendants. This has been done,
and has resulted in a judgment in favor of the Woods.
Hence, the contract is now mutual and obligatory
upon each. *Frue v. Houghton,* 6 Colo., 318. De-
fendants may have demanded the money which they
claim the plaintiff was to furnish, and may have, in
fact, advanced it themselves; they never claimed,
however, during the pendency of the action, to termi-
nate the contract, but, on the contrary, continued to
have the cause prosecuted under the arrangement
which plaintiff had made with counsel. If they ad-
vanced money which they were not required to ad-
vance, or have been damaged on account of the plain-
tiff's failure to do so, they cannot rescind now that
the contract is completed, and they have accepted the
benefits, when they failed during the period he was
in default, to take advantage of his delinquency. In
other words, they have received and retained the ben-
efits of at least a substantial, partial performance of
the contract on the part of plaintiff, and they cannot
now defeat its specific performance by showing that
he has not strictly complied with its terms and con-
ditions. *Kauffman v. Raeder,* 108 Fed., 171; *Ger-
man Savings Institution v. De La Vergne Ref. Mach.
Co., et al.,* 70 Fed. 146.

In the suit brought by the Woods, judgment was

rendered in their favor against the parties in possession of the mining premises for a sum which represented their interest in the ores theretofore extracted, and also for their interest in such premises. To the present action plaintiffs in error, Wheeler and The Aspen Mining and Smelting Company, were made defendants, and judgment rendered against them for the amount which the court found plaintiff was entitled to recover from the Woods as his part of the judgment in their favor, which represented their share of the value of the ores extracted, and also for his proportion of the interest recovered by them in the mining premises. This judgment, it is urged, is erroneous as to the defendants Wheeler and the Mining Company, for the reason that the agreement between the Woods and plaintiff did not constitute an assignment from the Woods to plaintiff in the property recovered. The contract recites that ''We, the parties of the first part (the Woods), each for ourselves, do hereby agree to give unto said party of the second part (plaintiff), a two-thirds (2-3) interest in and to the amount recovered for us through law, if legal proceedings are commenced, and if a settlement is had without legal procedings, then and in that case the said second party or his assigns is to receive a one-quarter ($\frac{1}{4}$) interest of all our said interest in and to the amount recovered by such settlement.''

An intention to assign on the one side, and an assent to receive on the other, operate as an equitable assignment of the subject matter of transfer, if sustained by a sufficient consideration. The form of words used is not alone controlling, but all the circumstances of the transaction are to be considered in determining the intention of the parties to such an agreement. 1 Beach's Eq., § 326; *Johnson Co. v. Bryson*, 27 Mo. App., 341; *Bower v. Hadden Blue Stone Co.*, 30 N. J. Eq., 171; 2 Story's Eq., § 1047;

*Holmes v. Evans,* 29 N. E., 233; *Fairbanks v. Sargeant,* 39 Hun. (N. Y.), 588.

The language employed in the contract itself is not a mere offer on the part of the Woods to pay plaintiff a sum out of the recovery, but an offer and promise to assign him a specific interest in such recovery. A resort to extrinsic circumstances proper to consider in connection with the language of the contract manifests this intention of the parties still more clearly. The judgment which might be recovered on the part of the Woods on account of their interest in the ores extracted, would be of no value unless it could be collected from the parties against whom rendered. This, it was known, would represent a large sum if the Woods prevailed. They surely did not contemplate, although they were not financially responsible, that any proportion of this judgment would represent the sum which they would be compelled to pay the plaintiff without regard to the amount which might be realized upon their judgment. No value was fixed, or could have well been settled, in advance for the interest in the mine to which they were entitled, and the parties must have necessarily understood that in this part of the recovery the plaintiff was to have a specified interest. A specific share in a specific property was what the parties contemplated. This was to be the compensation of plaintiff, and nothing more. The subject matter of assignment was not in existence at the time the contract was executed, but assignments of property to be acquired in the future may be enforced by a decree for a specific performance of the contract to assign as soon as the property comes into existence in the hands of the assignor, provided the assignee has performed his part of the contract. 1 Beach's Eq., § 328.

It is next contended that the amount to which the plaintiff is entitled under the terms of his contract is

so disproportionate to the expenditures in time and money upon his part that the contract is not enforceable in equity. There does not appear to have been any omission or mistake in the agreement, nor has there been any concealment, misrepresentation or any unfairness disclosed on the part of the plaintiff. Neither does it appear, when considered in the light of the facts and the information upon which the parties acted at the time the agreement was executed, to be either unconscientious or unreasonable. Plaintiff was in the possession of testimony which all the parties regarded at that time of such supreme importance that in all probability no suit would ever have been commenced on their behalf had it not been for the information on this subject then in plaintiff's possession. At that time the statute of limitations would have barred the claim of the Woods within a few months. Plaintiff assigned an interest in his contract, which the Woods recognized in compensating counsel employed to prosecute their action. In short, it appears, so far as advised from the record, that except for this contract which they entered into with plaintiff, and the information which the plaintiff had collected as to the citizenship of the deceased locator, no action would ever have been commenced to recover this interest, and the Woods, instead of having an interest in what at least was supposed at one time to be a valuable mine, and a money judgment for a large sum, would have had nothing. While the proceeding was being prosecuted, the Woods must have been as fully advised regarding the terms and conditions of the contract which they entered into with plaintiff, the benefits which they derived, or expected to derive under this arrangement, and the steps which he took in carrying it out, as they were after final judgment was rendered in their favor; and yet, during all that period, they do not appear to

have made the slightest objection to the contract, or to have intimated that they were in any manner misled in entering into it, or that it was unconscientious or unreasonable. In the face of this silence, and the acceptance of the benefits which they have enjoyed by virtue of the judgment obtained, in connection with the fact that all parties appear to have entered into the agreement in good faith, it is too late to raise the question that the contract should not be enforced because of a want of consideration, or is unconscionable and unreasonable.

It is contended the decree is excessive for the reason that there was a one-twelfth, instead of a one-tenth, of the original money judgment coming to each of the Woods. This claim is not tenable. According to the original decree, the money judgment was rendered in favor of the wife and five of the sons of the deceased, William J. Wood, to be apportioned among them according to their respective interests as heirs of deceased under the laws of descent in this state. This would give each of the Woods who appear as plaintiffs in error here a one-tenth interest in such judgment.

It appears that in settlement of the judgment originally rendered, the Woods received, as part consideration, a conveyance of certain mining property. The judgment rendered against the defendants was made a lien upon this property, with the provision that the unsatisfied balance should be paid by Wheeler and the Mining Company. It is asserted that the establishment of the lien is erroneous. Conceding this to be true, the parties are not in a position to complain. Wheeler and the Mining Company were personally responsible for the money judgment rendered in favor of plaintiff, and they certainly are not prejudiced by a decree which limits their personal responsibility to the sum remaining unsatisfied after

the property upon which the lien was established has been sold to apply upon the judgment. Neither are the Woods injured. The decree of the court gives no greater rights to plaintiff in the way of a lien than he could have secured by filing a transcript of the judgment with the clerk and recorder of the respective counties in which the mining property is situate, or by levying under an execution. A decree will not be reversed for errors which are not prejudicial.

The judgment of the district court is affirmed.

*Affirmed.*

Mr. JUSTICE STEELE not sitting.