## No. 14,735.

BEBBER ET AL., BOARD OF OPTOMETRIC EXAMINERS *v.* FISHER.

(102 P. [2d] 741)

Decided May 6, 1940.

Mr. BYRON G. ROGERS, Attorney General, Mr. C. E. SYDNER, Assistant, for plaintiffs in error.

Mr. BENJAMIN GRIFFITH, Mr. E. L. SHANER, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFFS in error are hereinafter referred to as the board and defendant in error as Fisher.

Fisher, during all the times hereinafter mentioned a duly licensed physician and surgeon, brought mandamus against the board to compel it to issue to him a certificate of competency to practice optometry. A general

demurrer to the complaint was overruled. The board elected to stand and to review the judgment thereupon accordingly entered it prosecutes this writ and asks that it be made a supersedeas. Both parties request final decision on this application. We consider their reasons good and so dispose of the cause. The assignments simply present the question, Is the complaint good?

Chapter 118, page 428, Laws 1913 was in force in January 1914 when Fisher obtained a certificate thereunder. A new act, chapter 120, '35 C.S.A. (chapter 140 Laws '25) was passed in 1925. The latter became effective April 15. In 1939 Fisher applied for a certificate thereunder and was refused. This action followed.

Fisher had practiced medicine on his own account, specializing in diseases of the eye, until 1936. Thereafter as an optometrist only in the employ of laymen, until the fall of 1939 when he was notified by the state board of medical examiners that such practice was illegal. The two Acts referred to, supra, comprise the only legislation in this state on the subject.

"The practice of optometry is hereby defined to be the employment of any means other than the use of drugs, for the measurement of the powers of vision and the adaptation of lenses and prisms for the aid thereof." Section 2, act of 1913.

"Nothing in this Act shall be construed to apply to physicians and surgeons lawfully entitled to practice medicine in this State, * * *." Section 15, id.

"The practice of optometry is defined to be (a) the employment of objective and subjective methods, or either of such methods, for the purpose of ascertaining defects of vision; or (b) the prescribing of lenses or prisms to remedy or relieve defects of vision." Section 1, act of 1925.

"* * * Provided, However, that any person who is the lawful holder of a certificate of competency duly issued prior to April 1, 1925, by the State Board of Optometric Examiners, established by Chapter 118 of the

Session Laws of Colorado of 1913, shall be entitled to be licensed under this Act without taking the examination provided for by this Act." Section 2, id.

"Every optometrist licensed or entitled to practice optometry *hereunder* who desires to continue in the practice of optometry in this State shall within thirty days after this Act takes effect, and annually thereafter, on or before the first day of April, pay to the Secretary-Treasurer of the Board a renewal fee of Five Dollars, for which he shall receive a renewal of his license. If such renewal fee is not paid on or before the first day of April the license of such delinquent shall become *automatically cancelled,* but may be restored at any time within six months after April 1, upon payment of a renewal fee and a penalty of ten dollars. The said fee is purely a license fee imposed solely for the purpose of creating a fund to meet the expenses of the Board." Section 15, id.

"Nothing in this Act shall be construed as applying to physicians and surgeons lawfully entitled to practice medicine in this State." Section 17, id.

"Nothing in this Act shall be construed so as to prevent any person, firm, or corporation from owning or operating a store or business establishment wherein optometry is practiced; Provided, that such store, establishment, or optometric department shall be in charge of a duly licensed and registered optometrist, whose name must appear on and in all optometric advertising of whatsoever nature done by said person, firm or corporation." Section 20, id.

The board's position is that since Fisher was licensed under the act of 1913 and neither applied for a renewal of his license within thirty days after the act of 1925 became effective, nor for restoration within six months after April 1 of the following year, his license became "automatically cancelled" as provided in section 15 of the act of 1925, and his only remedy is to take the examination provided for therein. Fisher's position is that

being a regularly licensed physician and surgeon he was never required under the terms of either act, and is not now required, to take an examination. It is undisputed that the practice of optometry is but one branch of the practice of medicine, and that a license for the latter covers the former. Fisher's trouble apparently arises from the fact that under the rule in *People v. Painless Parker*, 85 Colo. 304, 275 Pac. 928, a physician can not practice generally as the employee of a layman, whereas an optometrist may (Sec. 20, act of 1925, supra), and he wishes to do so.

Looking only to the reasons underlying this legislation it would appear that Fisher needs no certificate. His qualifications are established by his physician's license. If he practices only the optometric branch of his profession under employment by a layman he is protected by said section 20, and the exclusion of physicians, and does not come within the ban of the Painless Parker case. If the practice of optometry by a layman is thus excluded from the ban the fact that the practitioner is a duly licensed M.D. would not raise it against him. If the license of an M.D. covers optometry when practiced in connection with his profession it would seem equally potent when practiced under employment by a layman. Counsel assume, however, that in order to practice optometry as the employee of a layman Fisher must have an optometrist's license. Considering the peculiar requirements of said section 20 this may be true and we so assume. The question is, Must he stand examination because he did not apply within the time limited in said section 15? We think not. Section 8 of the act of 1925 requires the "standard examination" of all persons desiring to commence or continue the practice "except as herein otherwise provided," and section 17 thereof expressly exempts physicians. No provision of that act requires that a duly licensed M.D. shall take said examination. The "renewal" provided for in said section 15 is the renewal of a license issued under the Act of

1913. All Fisher lost, if anything, was that right. He has never been licensed under the later act.

The conclusion is inevitable that Fisher is either entitled to practice optometry, as the employee of a layman, by virtue of his physician's license, or that, by virtue thereof, he is entitled, without examination, to an optometrist's license provided he pays the statutory fees, and this he stands ready to do.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BAKKE concur.