249 P.2d 810

**WORLTON et al. v. DAVIS.**

No. 7896.

Supreme Court of Idaho.

Oct. 30, 1952.

218

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for appellants.

Holden & Holden, Idaho Falls, for respondent.

PORTER, Justice.

This is an action brought by appellants, seeking to restrain respondent from engaging in the practice of medicine and surgery within the County of Bonneville,

Idaho, for the period of five years from and after the 8th day of June, 1951. Among other allegations in their complaint, are the following:

"I.

"That on and prior to the 15th day of July, 1949, the Idaho Falls Clinic was a co-partnership consisting of W. R. Abbott, Clyde C. Hulse, and the plaintiffs herein, all of said co-partners being duly license– and practicing physicians and surgeons in the State of Idaho except said Clyde C. Hulse, who was the business manager of said partnership, and maintaining an office and place of business at Idaho Falls, Idaho, said co-partners being associated together as partners and operating under a written partnership agreement which provided, among other things, that if any partner should retire from the partnership or die during the continuance of the partnership, the surviving partners should succeed in equal share to the share of the retiring or deceased partner, and the partnership should be thereupon continued by the remaining or surviving partners.

"II.

"That on said 15th day of July, 1949, the defendant was and still is a duly licensed physician and surgeon in said State of Idaho.

"III.

"That under said date of July 15, 1949, said copartnership entered into a certain written contract with the defendant, under which the defendant agreed to practice medicine and surgery under the direction of said copartners, as an employee of said copartnership, for a compensation therein stated, for a period of two years from and after the date of said contract, a copy of the said contract being hereto attached, marked Exhibit 'A', and by reference made a part of this complaint to the same effect as if fully set forth herein.

"IV.

"That subsequently, and on or about the 3rd day of May, 1950, said Clyde C. Hulse retired from said copartnership, and sold and assigned all of his right, title and interest in said copartnership to the remaining partners, W. R. Abbott and the plaintiffs herein.

"V.

"That thereafter, and on or about the 19th day of March, 1951, the said W. R. Abbott died, and the plaintiffs herein thereupon succeeded to and purchased all right, title and interest of the said W. R. Abbott, deceased, in said copartnership, and that the plaintiffs are now the sole owners of all of the business, property and interests of said Idaho Falls Clinic, as copartners, * * *.

"VIII.

"That under the provisions of said contract of employment, as appears by

said Exhibit 'A' attached hereto, it was provided therein, and the defendant agreed, that upon the expiration or earlier termination of said contract, he, the defendant, would not, for a period of five years after such expiration or termination, engage in the practice of medicine and surgery in the County of Bonneville, Idaho, and that in as much as it would be difficult, if not impossible, to arrive at, or compute the damages resulting from a breach of such provisions of said contract, it was agreed that, upon the violation of said provisions, the first parties therein, the members of said copartnership, should be entitled to an injunction enjoining and restraining the party of the second part therein, defendant herein, from any further violation or threatened violation of said contract."

It is also alleged in the complaint that pursuant to said contract of employment the defendant on or about the 15th day of July, 1949, entered the employ of said Idaho Falls Clinic and thereafter continued in said employment. That on the 18th day of April, 1951, respondent notified appellants that he intended to quit and terminate his employment and intended to open an office in the City of Idaho Falls, in Bonneville County, and to engage in the practice of medicine and surgery therein. And that respondent did leave his employment by the copartnership on the 8th day of June, 1951, and ever since has been engaged in the practice of medicine and surgery in Bonneville County contrary to the provisions of said agreement.

Respondent filed a general and special demurrer to said complaint. The general demurrer was by the court sustained. Appellants elected to stand upon their complaint and judgment of dismissal of the action was entered. From such judgment, appellants appeal to this court.

Under his general demurrer, respondent contends, first, that "the withdrawal of Hulse, the death of Dr. Abbott, each operated to dissolve the partnership, terminating the employment contract with respondent. Further services of respondent were furnished on an implied contract." This contention is made in connection with the provision in the contract that if the same be terminated by the parties of the first part for any cause other than failure of party of the second part to comply with the provisions of the agreement, then the agreement not to engage in the practice of medicine and surgery for a period of five years in Bonneville County is not to apply. And, second, respondent contends that the contract was void and contrary to public policy in that one of the partners in the Idaho Falls Clinic was a layman and that the contract provides for the practice of medicine and surgery by a layman through a licensed employee, and by respondent as an employee of a layman.

The trial court apparently sustained the demurrer on the first contention of

respondent. However, we are concerned only with the ruling of the trial court sustaining the demurrer and dismissing the action, not the grounds upon which the ruling was made. If the demurrer was good upon either of the grounds stated, the ruling of the trial court must be sustained even though he may have sustained the demurrer upon an erroneous ground. Chandler v. Drainage Dist. No. 2, 68 Idaho 42, 187 P.2d 971; Fortner v. Cornell, 66 Idaho 512, 163 P.2d 299; Telfer v. School Dist. No. 31, 50 Idaho 274, 295 P. 632. We are of the opinion that the first and controlling question in this case is whether the contract of employment was void as contrary to public policy; and having concluded that the contract was void as contravening public policy, it is unnecessary to determine the effect the withdrawal of the partner Hulse or the death of the partner Dr. Abbott had upon the contract of employment.

It is well established that no unlicensed person or entity may engage in the practice of the medical profession through licensed employees; nor may a licensed physician practice as an employee of an unlicensed person or entity. Such practices are contrary to public policy. State v. Boren, 36 Wash.2d 522, 219 P.2d 566, 20 A.L.R.2d 798; State v. Bailey Dental Co., 211 Iowa 781, 234 N.W. 260; People v. Painless Parker Dentist, 85 Colo. 304, 275 P. 928; Bebber v. Fisher, 106 Colo. 197, 102 P.2d 741; Painless Parker v. Board of Dental Examiners, 216 Cal. 285, 14 P.2d 67; Pacific Employers Ins. Co. v. Carpenter, 10 Cal.App.2d 592, 52 P.2d 992 and cases collected and cited therein; In re Eastern Idaho Loan & Trust Co., 49 Idaho 280, 288 P. 157, 73 A.L.R. 1323; Note 103 A.L.R. 1240.

Appellants do not contest the foregoing rules but urge it may be inferred that the duties of the partner Hulse were confined to those of office manager and that he at no time ever performed any of the functions of a licensed physician and surgeon; and that any claim that Hulse exercised any direction or control over the professional work of respondent would be a matter of defense. Appellants cite, in support of their contention, Messner v. Board of Dental Examiners, 87 Cal.App. 199, 262 P. 58, 60. However, in that case the court was dealing with a statute which prohibited an unlicensed person from managing a dental office. The court held that it appeared from the evidence that the layman, Cohn, an employee, had charge of the purely business end of the dental office in question, but that there was no evidence he had or exercised the slightest control or direction of the professional work performed in such office. The court further said, "Had it been shown that Cohn had authority to participate in the employment or discharge of those engaged to do professional work and the fixing of their com-

pensation a different question would arise. The power to hire and discharge and to fix the compensation of an employee necessarily implies the power to control his work. But no such power is shown to have been given Cohn."

The partner Hulse, not only was business manager of the Idaho Falls Clinic, but had his rights and duties as a member of the copartnership. He had a voice and vote in the employment of respondent and the remuneration to be paid him. Also, the contract of employment contains the following provision:

"Second party agrees that he will, during the term of his employment hereunder, work under the supervision and direction of first parties and obey first parties' orders and instructions and that he will practice his said profession according to the best of his skill and knowledge, and not engage in any other business or practice for his own personal gain and benefit unless the consent of first parties be first obtained in writing."

The position of Hulse was that of a layman attempting to practice medicine through a licensed employee. Painless Parker v. Board of Dental Examiners, supra.

While it might appear that the parties acted in good faith and that no particular injury resulted to the public, this court has laid down the rule as to the test to be applied to such contracts in Stearns v. Williams, 72 Idaho 276, 240 P.2d 833, 837;

"The usual test applied by courts in determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a tendency toward such an evil, Wood v. Casserleigh, 30 Colo. 287, 71 P. 360; if it is opposed to the interest of the public, or has a tendency to offend public policy, it will be declared invalid, even though the parties acted in good faith and no injury to the public would result in the particular instance; the test to be applied is not what is actually done but that which may or might be done under the terms of the contract; it is the evil tendency of the contract and not its actual injury to the public that is determinative, as the law looks to its general tendency and closes the door to temptation by refusing to recognize such agreements." See Goodier v. Hamilton, 172 Wash. 60, 19 P.2d 392; Pyle v. Kernan, 148 Or. 666, 36 P.2d 580.

Appellants seem to take the position that respondent, having continued in the employ of the partnership after the retirement of Hulse, is estopped to challenge the contract of employment or its continued existence. It is well established that if a contract is void as against public policy, the courts will refuse to enforce the same

and will leave the parties in the identical situation in which it finds them, and the contract cannot be treated as valid by invoking estoppel. A. C. Frost & Co. v. Coeur d'Alene Min. Corp., 61 Idaho 21, 98 P.2d 965; Id., 312 U.S. 38, 61 S.Ct. 414, 85 L.Ed. 500; Deer Creek H. Dist. v. Doumecq H. Dist., 37 Idaho 601, 218 P. 371; McFall v. Arkoosh, 37 Idaho 243, 215 P. 978; Libby v. Pelham, 30 Idaho 614, 166 P. 575.

In Reno v. American Ice Mach. Co., 72 Cal.App. 409, 237 P. 784, at 785, we find the following language:

"The doctrines of estoppel by conduct and ratification have no application to a contract which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no legal existence for any purpose, and neither action nor inaction of a party to it can validate it, and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity."

We conclude that the trial court properly sustained respondent's demurrer to the complaint of appellants and did not err in entering judgment of dismissal. Judgment affirmed. Costs to respondent.

GIVENS, C. J., and TAYLOR and THOMAS, JJ., concur.

KEETON, J., dissents.