990 P.2d 1219

Gregory W. KUNZ, Trustee for the Gregory W. Kunz Trust, as successor in interest to Kunz and Company, a California corporation dba Pridemark Outdoor Advertising, Plaintiff–Appellant,

v.

LOBO LODGE, INC., an Idaho corporation, Safeway, Inc., a Delaware corporation and John Doe Contractor, an unidentified individual or corporation, Defendants–Respondents.

Lobo Lodge, Inc., an Idaho corporation, Third Party Plaintiff–Respondent,

v.

Donrey Outdoor Advertising, a foreign corporation, Third Party Defendant–Appellant.

No. 24607.

Court of Appeals of Idaho.

Nov. 23, 1999.

Lodge, Inc. (Lobo Lodge) and order awarding attorney fees. We affirm the granting of summary judgment, but reverse as to the order awarding fees.

## I.

### FACTS AND PROCEDURE

In December of 1990, Lobo Lodge and Donrey Outdoor Advertising (Donrey) entered into two ten-year leases whereby Donrey leased two small parcels of land from Lobo Lodge for the purpose of maintaining two billboards. Section E of these leases provided that:

> in the event Owner proposes the construction of a permanent building upon the Lease Site, or upon the Premises where the location of the sign would violate any applicable zoning or building setback requirements, from the proposed building, the Owner may terminate this Lease upon ninety days prior written notice which must be accompanied by a copy of the Owner's building permit, a copy of the Owner's building plans showing encroachment of the building upon the Lease Site, notice of the date construction will commence, and the refund to Donrey of all prepaid rental as of the construction commencement date.

Before the leases took effect, however, the City amended an ordinance to criminalize the maintenance of billboards on a class of property that included Lobo Lodge's property.[1] The advertising structures in question were there prior to 1984 and before the relevant billboard ordinance. The Donrey billboards did not fit within any exceptions provided in the amended ordinance. In fact, the nonconforming billboards were supposed to be removed in 1985 and thereafter were required to be removed immediately in 1991.[2] The amendments to the City ordinance also required that all signs maintained in the City

---

Charles B. Lempesis, Post Falls, for appellant.

John F. Magnuson, Coeur d'Alene, for respondents. John F. Magnuson argued.

SCHWARTZMAN, Judge.

Gregory W. Kunz/Pridemark Outdoor Advertising (Kunz) appeals from the district court's grant of summary judgment to Lobo

---

1. Section 15.24.095 of the city ordinance provides that violators can be fined up to $300 or be imprisoned for not more than three months in jail or both. Section 15.24.100 further provides that each day a violating sign remains in place shall constitute a new violation.

2. Section 15.24.610, enacted in 1991, provides that "any standardized outdoor advertising sign existing prior to the effective date of this Section and not in conformance with the location limitations of Section 15.24.335 was previously re-

have a permit and that a permit fee be paid. Neither of these requirements was ever fulfilled by any party.

Three months after signing the leases, Donrey made a proposal to the City to protect its interest and acknowledged that it understood that these advertising structures were illegal. Donrey then instituted a suit against the City to declare the ordinances unconstitutional under the First Amendment to the United States Constitution, but neither party has actively pursued this litigation and the case has lain dormant.

In December of 1993, Lobo Lodge began to negotiate a sale agreement for the subject real estate with Safeway, Inc. (Safeway). One year later, Safeway informed Lobo Lodge that it did not want to continue allowing the Donrey billboards. In January of 1995, Lobo Lodge tried to resolve the issue with Donrey and discovered that Donrey had assigned its interests under the leases to Kunz, including substituting Kunz as the plaintiff in the constitutional lawsuit. Kunz knew when it inherited the lawsuit that it was taking assignment of an "illegal" lease. Kunz continued to maintain the billboards without the required permits.

In March of 1995, Lobo Lodge sent a ninety-day notice of termination to Kunz based on section E of the leases and included the necessary documents.[3] Kunz refused to remove the billboards, asserting bad faith on Lobo Lodge's part. On April 26th, Lobo Lodge and Safeway finalized the sale of the parcel and Safeway agreed to facilitate a new ninety-day notice of termination to Kunz by supplying Kunz with its proposed building permits. Lobo Lodge agreed at this time that if Kunz again refused to take down the billboards, then Lobo Lodge would remove them after the expiration of the ninety-day notice period. On May 2nd, Lobo Lodge notified Kunz that Safeway purchased the property including the two leases. On May 26th, the Vice President of Lobo Lodge drove by the subject property and noticed that one of the billboards had been removed.

Lobo Lodge discovered that Safeway had removed the billboard and immediately sent a notice to Safeway indicating that Safeway's actions would "probably severely impede Lobo's ability to resolve the dispute with [Kunz]." Safeway has, throughout this litigation, admitted to taking down Kunz's billboard.

On June 21, 1995, Lobo Lodge sent a new ninety-day notice of termination to Kunz with the proper Safeway building permit enclosed pursuant to Section E of the lease. Two days later, Kunz filed its complaint against Safeway and Lobo Lodge alleging breach of contract, conversion, negligent destruction of property, and intentional interference with business relationships. Upon expiration of the ninety-day notice period, Safeway removed the remaining billboard. Eventually Lobo Lodge filed a motion for summary judgment, asserting, among other grounds, the illegality of the subject leases based on the City's ordinance.

On March 28, 1998, the district court granted Lobo Lodge summary judgment as to Kunz's four claims. The motion was granted in part because the "billboard leases Kunz seeks to enforce are unlawful" and "it was Safeway that removed the billboards without any knowledge or consent of Lobo." The district court then issued an order awarding Lobo Lodge its attorney fees under I.C. § 12–120(3). We affirm the order granting summary judgment, but reverse as to the award of attorney fees.

## II.

### WHEN A CONTRACT DIRECTLY CONTRAVENES A MUNICIPAL CRIMINAL ORDINANCE AND PARTIES NEVERTHELESS KNOWINGLY ENTER INTO SUCH A CONTRACT, WE DECLINE TO ENFORCE IT FOR THE BENEFIT OR DETRIMENT OF EITHER PARTY

 We note preliminarily that Kunz's claims for conversion, negligent destruction

---

quired to be removed by April 1, 1985 under Section 15.24.275 and therefore shall be removed immediately."

**3.** The buildings proposed were not for a Safeway store, but were for two small storage buildings to be specifically located where the two Kunz billboards were located, despite the existence of several other areas where such buildings could have been built.

of property, and intentional interference with business relationships fail because Safeway, who is not a party on appeal, removed the billboards, not Lobo Lodge. Lobo Lodge has not been shown to bear any responsibility for the billboard removal.

■ Kunz asserts that the district court failed to perform a necessary balancing of competing public policies to determine if the lease agreements should be enforced.[4] However, this case is not about a contract in possible violation of public policy. Rather, this case concerns leases made in direct contravention of a municipal criminal ordinance and a party who knowingly took assignment of and maintained said leases. Accordingly, we decline to adopt a competing public policy analysis in this context.

■ Contracts to do acts forbidden by law are void and cannot be enforced. *Tiffany v. Boatman's Sav. Inst.,* 85 U.S.(18 Wall.) 375, 384, 21 L.Ed. 868, 869 (1873); *Harris v. Runnels,* 53 U.S.(12 How.) 79, 83, 13 L.Ed. 901, 903 (1851). Generally, a contract "which is made for the purpose of furthering any matter or thing prohibited by statute ... is void. This rule applies to every contract which is founded on a transaction *malum in se,* or which is prohibited by statute, on the ground of public policy." *Porter v. Canyon County Farmers' Mut. Fire Ins. Co.,* 45 Idaho 522, 525, 263 P. 632, 633 (1928), *citing Swanger v. Mayberry,* 59 Cal. 91, 94, 1881 WL 1766 (Cal. July Term 1881). One commentary also states the general rule:

that, so far as contracts in *violation of statute* are concerned, there is no distinc-

tion between acts mala in se and acts mala prohibita ... [W]here a statute intends to prohibit an act, it must be held that its violation is illegal, without regard to the reason of the inhibition ... or to the ignorance of the parties as to the prohibiting statute. (emphasis added)

17A Am.Jur. 2D *Contracts* § 251 (1991).

In *Hancock v. Elkington,* 67 Idaho 542, 186 P.2d 494 (1947), the Idaho Supreme Court stated that:

No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; ... the law in short will not aid either party to an illegal contract; it leaves the parties where it finds them. The general rule is the same at law and in equity, and whether the contract is executory or executed.

*Hancock,* 67 Idaho at 548, 186 P.2d at 498, *quoting* 17 C.J.S., Contracts § 272.

■ When Kunz took assignment of the leases from Donrey, it had knowledge of the continuing illegality of the leases' purpose. As part of the assignment, Kunz was substituted as plaintiff in the ongoing lawsuit challenging the constitutionality of the City's ordinance. Kunz does not dispute that it had knowledge of the leases' claimed illegality. Kunz continued to maintain the prohibited uses without securing the required permits or paying the mandated fees. Kunz assumed the risks inherent in an ongoing illegal agreement. Kunz argues that Lobo Lodge should also not be permitted to benefit from the illegal contract. However,

We also note that Kunz asserts as authority 17A Am.Jur. 2D *Contracts* §§ 247–252 and the 2d Restatement of Contracts § 178. However, Kunz seems to have read over that portion which states:

where a statute imposing a criminal sanction is silent as to whether a contract in contravention of it is void and contains nothing from which the contrary can be properly inferred, then such a contract is void. Also, in the absence of any indication of a legislative intent otherwise, an agreement made in violation of a penal statute, though not expressly prohibited or declared invalid, is void and unenforceable whether executory or executed.

17 Am.Jur. 2D *Contracts* § 252 (1991).

---

4. Kunz's argument is that each case where it is alleged that a contract is void as against public policy must depend upon its own facts. *Smith v. Idaho Hospital Service, Inc.,* 89 Idaho 499, 504, 406 P.2d 696, 699 (1965), *citing Stearns v. Williams,* 72 Idaho 276, 240 P.2d 833 (1952). Kunz asserts that agreements made between competent persons should not be set aside lightly on public policy grounds. *Foremost Ins. Co. v. Putzier,* 100 Idaho 883, 606 P.2d 987 (1980). We note however, that none of the cases cited by Kunz involve, as here, a contract made knowingly in direct contravention of a city ordinance, statute or law. The cases cited by Kunz involve public policy weighing by courts, in scenarios where no legislative voice had directly spoken.

This rule is made for the protection of the public and not for the benefit of the parties; its object in refusing relief to either party where the contract is executed is not to give validity to the transaction but to deprive the parties of all right to have either enforcement of, or relief from, the illegal agreement. In such cases the defense of illegality prevails, not as a protection to defendant, but as a disability in plaintiff.... While it may not always seem an honorable thing to do, yet a party to an illegal agreement is permitted to set up the illegality as a defense.

17 C.J.S. Contracts § 272 (1963).

Additionally, if we were to adopt Kunz's analysis (requiring a balancing of public policy concerns every time the court encounters a contract made in contravention of a municipal criminal ordinance), the laws of Idaho's municipalities as well as those of Idaho itself would fall into disarray. If parties knew that they could enter into contracts in direct contravention of law and then seek judicial relief if and when the transaction went awry, then citizens would be encouraged to conduct a risk-benefit analysis before entering into such illegal contracts. If a contract's economic benefit substantially outweighs the penalties the party could be subject to, then such party has an incentive to make the agreement in conflict with existing regulatory laws, hoping that it could still have its contract enforced by the judiciary.[5]

By ruling as we do today, citizens will have no incentive to knowingly enter into contracts in direct contravention of regulatory criminal ordinances. On the facts of this case, we adopt the rule generally applicable to illegal contracts and leave the parties where we find them, i.e. with no enforceable agreement.

### III.

### ATTORNEY FEES UNDER I.C. § 12–120(3) SHOULD NOT BE AWARDED BASED ON ILLEGAL CONTRACTS

 The Idaho Supreme Court, in *Brower v. E.I. DuPont De Nemours and Co.,* 117 Idaho 780, 792 P.2d 345 (1990), held that an award of attorney fees under I.C. § 12–120(3) is justified only if a "commercial transaction comprises the gravamen of the lawsuit." The commercial transaction must be "integral to the claim" and constitute "the basis upon which the party is attempting to recover." *Kelly v. Silverwood Estates,* 127 Idaho 624, 631, 903 P.2d 1321, 1328 (1995); *Brower,* 117 Idaho at 784, 792 P.2d at 349. While Kunz does not deny that its claims were grounded in the commercial leases, it argues that Lobo Lodge should not be permitted to claim the benefit of I.C. § 12–120(3) based upon the defense that the commercial transaction was illegal to begin with. We agree.

We conclude that the district court erred in awarding attorney fees under I.C. § 12–120(3) to Lobo Lodge as the prevailing party because the leases were entered into knowingly and in direct contravention of a municipal criminal ordinance. The parties should be left exactly where they are found. *See Whitney v. Continental Life and Accident Co.,* 89 Idaho 96, 403 P.2d 573 (1965) (holding that if a contract is void as against public policy, then the court will refuse to enforce it and will leave the parties in the identical situation in which it found them); *Nash v. Meyer,* 54 Idaho 283, 31 P.2d 273 (1934) (citing as fundamental the position that rights based on violation of law will never be enforced by the courts and that when a transaction is shown to be illegal because of contravention of a statute, a court is justified in its refusal to uphold the transaction in any way); *Libby v. Pelham,* 30 Idaho 614, 166 P. 575 (1917) (asserting the position that if a transaction is illegal because in contravention to a statute, it is sufficient to justify a refusal to uphold the transaction in any way, leaving the parties in the situation in which they have voluntarily placed themselves).

Accordingly, we reverse the district court's award of attorney fees to Lobo Lodge under

---

**5.** Such might be the case in a situation like the one before us where the penalty that would likely be imposed, even assuming the City sought to enforce its ordinance, is far overshadowed by the projected economic benefit to be realized. Kunz has alleged over four hundred thousand dollars ($400,000) in damages resulting from the removal of its two billboards.

I.C. § 12–120(3).[6]

## IV.

### CONCLUSION

When, as here, we refuse to enforce a contract in contravention to a city ordinance, we do not act for the benefit of any party or act to preserve the alleged rights of any party. We only act to uphold the integrity of the judicial process. For the above stated reasons, we affirm the district court's grant of summary judgment to Lobo Lodge, but reverse the award of attorney fees. No costs or attorney fees are awarded on appeal.

Chief Judge PERRY, and Judge Pro Tem McDERMOTT, concur.

---

**6.** Lest there be confusion, we distinguish prior cases in line with *Lawrence v. Jones,* 124 Idaho 748, 864 P.2d 194 (Ct.App.1993), wherein we held that I.C. § 12–120(3) attorney fees were warranted even where the underlying commercial transaction was void or deemed unenforceable. Cases such as *Lawrence* do not involve contracts whose performance resulted in violation of law and are therefore illegal.