32 P.3d 1116

Patricia MORRISON and Joseph D. Morrison, husband and wife, Plaintiffs–Counterdefendants–Appellants,

v.

Larry YOUNG and Evelyn M. Young, husband and wife, Defendants–Counterclaimants–Respondents.

No. 26262.

Supreme Court of Idaho,
Idaho Falls, May 2001 Term.

Sept. 21, 2001.

Meyers, Thomsen & Larson, LLP, Pocatello, for appellants. A. Bruce Larson argued.

Racine, Olson, Nye, Budge & Bailey, Pocatello; Steven R. Fuller Law Office, Preston, for respondents. Steven R. Fuller argued.

TROUT, Chief Justice.

This is an appeal from the district judge's order granting summary judgment in favor of Respondents, Larry and Evelyn Young (the "Youngs") against Joseph and Patricia Morrisons' (the "Morrisons") claims to quiet title and their claim of trespass.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In the spring of 1986, Joseph Morrison ("Joseph") approached Evelyn Young ("Evelyn") to discuss the conveyance of a parcel of property to the Youngs.[1] Joseph had been laid off and was behind on his child support payments. In a deposition taken July 22, 1999, Joseph indicated that he wished to convey the property to the Youngs to avoid losing the property because of his child support obligations. On March 12, 1986 Joseph conveyed the property by warranty deed to the Youngs ("1986 Deed"). The parcel of property conveyed by the 1986 Deed is adjacent and contiguous to real property owned by the Youngs upon which the Youngs have a house. The parties discussed Joseph's intention to repurchase the parcel when he got his financial obligations, including child support, back in order; however, this agreement was not reduced to writing. Patricia Morrison ("Patricia"), Joseph's common-law wife, did not execute the 1986 Deed; the Youngs did not take possession of the property; and the parties dispute whether any consideration was received for the conveyance.

On November 27, 1987, the Morrisons tendered a check to the Youngs in the amount of $1,100 to repurchase the property. The Youngs did not negotiate the check and returned it to the Morrisons on February 16, 1988. In a letter accompanying the returned check, the Youngs indicated they would not sign the land back to the Morrisons at that time but discussed other options regarding trading portions of the two parcels of land to increase the land surrounding the Youngs' house.

No further action was taken to obtain reconveyance of the land until December 1998 when the Morrisons brought suit claiming title to the land and seeking to enjoin the Youngs from trespassing and interfering with the property and requiring them to remove any structures or fences they had constructed. The Youngs filed an answer and counterclaim asserting affirmative defenses to the Morrisons claim of title, counterclaiming trespass against the Morrisons, and asking for an order quieting title in the property. The Morrisons subsequently filed a motion for summary judgment. Prior to hearing argument on the motion, the district judge announced that, based upon the record, the court believed the conveyance of the property was against public policy. The parties filed supplemental memoranda arguing the issue. The district judge entered a memorandum decision and order on November 12, 1999 finding the conveyance of the property was against public policy because the transaction occurred to avoid an obligation of paying past due and future child support. Because the contract was void as against public policy, the court determined it should leave the parties in the identical situation in which it found them; therefore, the Youngs were found to be the fee simple owners of the subject property. A final judgment was issued January 7, 2000. The Morrisons filed a timely notice of appeal to this Court.

## II.

### STANDARD OF REVIEW

This Court's review of a trial court's ruling on a motion for summary judgment is the same as that required of the trial court when ruling on the motion. *Turpen v. Granieri*, 133 Idaho 244, 246, 985 P.2d 669, 671 (1999)(citing *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29 (1994)). Pursuant to I.R.C.P. 56(c), summary judgment must be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). This Court, on review, liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Turpen*, 133 Idaho at 247, 985 P.2d at 672 (citing *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994)). If reasonable people could reach different conclusions,

---

1. Larry and Evelyn Young are husband and wife; Patricia and Joseph Morrison are husband and wife by common law marriage. Evelyn Young is the sister of Appellant Joseph Morrison.

or draw conflicting inferences from the evidence, the motion should be denied. *Id.* (citations omitted). However, if the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review. *Id.*

## III.

### DISCUSSION

**A.  The conveyance of property to avoid child support obligations is void as against public policy; therefore, the entire transaction, including the conveyance, is void.**

Although the parties did not originally argue the illegality of the contract, the district judge was correct in raising the issue *sua sponte.* *Quiring v. Quiring,* 130 Idaho 560, 566, 944 P.2d 695, 701 (1997) (stating that the court "has a duty to raise the issue of illegality, whether pled or otherwise, at any stage in the litigation") (citations omitted).

■ Whether a contract is illegal is a question of law for the Court to determine from all the facts and circumstances of each case. *Quiring,* 130 Idaho at 566, 944 P.2d at 701 (*citing Stearns v. Williams,* 72 Idaho 276, 283, 240 P.2d 833, 840 (1952)). The district judge was likewise correct in finding the transfer of property to avoid an obligation of paying past and future child support is against public policy. Idaho statutes and case law establish clear policy on the issue. For example, I.C. § 18–401 makes the non-payment of child support a criminal act punishable "by a fine of not more than $500.00" and/or "by imprisonment not to exceed fourteen (14) years." Our case law also establishes clear precedent regarding the obligation of parents to support their minor children. *See In re Wilson's Guardianship,* 68 Idaho 486, 486, 199 P.2d 261, 264 (1948). In *Petty v. Petty,* 66 Idaho 717, 168 P.2d 818 (1946), the Court found the statutory obligation of a father to support his children stands equal to a claim reduced to judgment and, therefore, the child was allowed to set aside a conveyance as fraudulent when conveyed to avoid paying support of the child. *Id.* at 723, 168 P.2d at 821.

In their briefs to this Court both parties seem to agree with the district judge's determination that the transfer of the property to avoid possible child support obligations was against public policy. However, the Morrisons appeal the district judge's determination that, because the agreement was against public policy, the land should remain with the Youngs. The Morrisons argue that if the transaction was void because it was based on illegal consideration, the entire transaction, including the conveyance, should be declared illegal.

Idaho precedent clearly states "[i]t is well established that if a contract is void as against public policy, the courts will refuse to enforce the same and will leave the parties in the identical situation in which it finds them...." *Worlton v. Davis,* 73 Idaho 217, 223, 249 P.2d 810, 814 (1952); *A.C. Frost & Co. v. Coeur D'Alene Mines Corp.,* 61 Idaho 21, 98 P.2d 965 (1939). Based on this principle, the district judge left the property with the Youngs, effectively enforcing the 1986 Deed, but not the agreement to reconvey the property. The district judge reasoned:

> Since the above contract between Morrisons and Youngs is void as to public policy, the Court has no choice but to leave the Youngs with the property. The Court may not get involved to assist an individual in avoiding his duty to his children. Though Morrisons have asked the Court to use its equitable powers to assist them, they come to the Court with unclean hands. Equity is not available to them.

Although the district judge correctly cited the applicable case law and is correct that "the courts ... will leave the parties in the identical situation in which it finds them", the factual circumstances surrounding our precedent indicate the district judge's application of this legal principle is incorrect. This Court was faced with a similar question in *Quiring v. Quiring,* 130 Idaho 560, 944 P.2d 695 (1997). In *Quiring,* the husband, prior to divorce, signed a quitclaim deed conveying his interest to their community property to his wife. The husband agreed to deed the property to his wife because she had confronted him with allegations that he committed sexual improprieties with his adopted

daughter and threatened to inform the police and his employer regarding the allegations. The husband drafted an Agreement relinquishing his interest in the property in exchange for their past differences "being forgotten and not brought up by [the wife] or either of the two children." *Id.* at 562, 944 P.2d at 697. The wife signed the Agreement during the signing of the quitclaim deed. The husband's acquiescence in the quitclaim deed was supported by the wife's acquiescence in the Agreement. We found the Agreement was against public policy because the wife cannot contract to refrain from informing authorities about sexual improprieties with a child; therefore, the transfer of the quitclaim deed was void because it was premised on this illegal consideration. *Id.* at 568, 944 P.2d at 703. The determination of the district court, finding the wife had acquired sole title through the quitclaim deed, was therefore reversed. To reach this result in *Quiring* we relied on the theory that:

> A party to an illegal contract cannot ask the Court to have its illegal objects carried out, as the law will not aid either party to an illegal agreement, but leaves the parties where it finds them.

*Id.* However, our application of this principle in *Quiring* makes clear that we will not leave the parties in their current position, which would have upheld the quitclaim deed; instead we nullified the entire illegal agreement.

In addition, this Court in *Worlton v. Davis*, 73 Idaho 217, 249 P.2d 810 (1952) upheld the dismissal of an action seeking to restrain a doctor from engaging in the practice of medicine. We found a non-compete agreement entered into by the partnership was void as against public policy because it was entered into by doctors and a layman. We again stated that if a contract is void as against public policy, the courts will refuse to enforce it, "and will leave the parties in the identical situation in which it finds them." *Id.* at 222–23, 249 P.2d at 814. However, in applying this principle to sustain the dismissal of the action, we left the parties as if no agreement were made. *See also, Kunz v. Lobo Lodge, Inc.,* 133 Idaho 608, 990 P.2d 1219 (1999).

In this case, the parties' agreement to transfer the property by warranty deed was based in part on the oral agreement to reconvey the property once the threat of suit for payment of child support had passed. The entire agreement—to convey and reconvey the property—was based on illegal consideration; therefore, the entire agreement, not just the agreement to reconvey the property, is void as against public policy.

We recognize that application of this principle in this case does lead to the result of having the property returned to the Morrisons, even though they were the party trying to avoid child support obligations. Although this may not be the desired result in this case, this Court has long stated it will not rule on the public policy issue solely based on the case at hand, but will also look to the broader implications of allowing such an agreement to stand.

> The usual test applied by courts in determining whether a contract offends public policy and is antagonistic to the public interest is whether the contract has a tendency toward such an evil; if it is opposed to the interest of the public, or has a tendency to offend public policy, it will be declared invalid, even though the parties acted in good faith and no injury to the public would result in the particular instance; the test to be applied is not what is actually done but that which may or might be done under the terms of the contract; it is the evil tendency of the contract and not its actual injury to the public that is determinative, as the law looks to its general tendency and closes the door to temptation by refusing to recognize such agreements.

*Quiring,* 130 Idaho at 568, 944 P.2d at 703 (*quoting Stearns v. Williams,* 72 Idaho 276, 283, 240 P.2d 833, 840 (1952)). In this case, the property was transferred to avoid the possibility of suit for past due child support. The evil tendency of this contract is obvious and although it appears no suit for child support was ever brought, and no actual injury to the public occurred, we must refuse to recognize any part of this agreement to avoid setting precedent that may shield this type of transfer in the future.

320

We agree with the district judge's determination that the conveyance of property to avoid child support obligations is void for public policy reasons. However, because we find the entire agreement, not just the oral agreement to reconvey the property, should be set aside, the district judge erred in granting summary judgment in favor of the Youngs.

## B. Alternative grounds for upholding the district court's grant of summary judgment to the Youngs.

■ In their original motion for summary judgment the Youngs asserted ten affirmative defenses against the Morrisons' claims. For example, the Youngs argue the statute of limitations, the equitable doctrine of laches, and the statute of frauds, should bar the Morrisons' claims. The district judge never addressed these issues and instead granted summary judgment based on the public policy issue. These defenses were reasserted on appeal as alternative grounds for upholding the district judge's grant of summary judgment in the Youngs' favor. Although the statute of limitations and the equitable doctrine of laches may have precluded the bringing of this action, these affirmative defenses cannot be ruled on by this Court as a matter of law because there are genuine issues of material fact in dispute that remain to be determined by the district judge on remand.

## IV.

## CONCLUSION

The district judge erred in finding that because the agreement to reconvey the property was void for public policy reasons, the property should remain with the Youngs. Because the entire transaction was based on illegal consideration, we hold the entire agreement, including the 1986 Deed, is void as against public policy. The district judge's enforcement of the 1986 Deed is therefore reversed. The matter is remanded for the district judge to consider the Youngs' affirmative defenses and any claims the Youngs may have against the Morrisons as a result of their maintaining the property during the time it was deeded to them. Costs on appeal are awarded to the Morrisons.

Justices WALTERS and EISMANN, concur.

Justice SCHROEDER, dissenting.

I respectfully dissent from the Court's opinion, recognizing that there is no good result possible in this case regardless of the outcome. Neither the district court nor this Court has before it the persons harmed by this illegal arrangement. Suffice it to say that I agree with the district court's analysis and reasoning.

Justice KIDWELL, dissenting.

Because I believe the courts, when administering equity, should leave parties as they find them when both parties have acted inequitably, I respectfully dissent.

While I agree with the long-standing maxim that when a contract is unenforceable or void as against public policy a court should leave the parties as it found them, I disagree as to the application of that maxim to these particular facts. I do not believe that the cases of *Quiring v. Quiring,* 130 Idaho 560, 944 P.2d 695 (1997) and *Worlton v. Davis,* 73 Idaho 217, 249 P.2d 810 (1952), cited for the proposition that the deed to the Youngs should be invalidated, are controlling in this case. In *Worlton,* this Court refused to enforce the employee physician's non-compete clause because the entire contract was held to be void as against public policy. Although the majority cites *Worlton* for the proposition that the parties should be left as though there were never a contract, that is not what the Court did in that case. The Court did not order the return of compensation paid to the physician for the 21 months during which he performed services, invalidate employer liability for actions of the employee physician, or remove any other vestiges of the non-offending provisions of the contract. The Court in *Worlton* refused to enforce the particular offending contract provision, as should be done in this case.

In *Quiring,* this Court held that the contract involved was unenforceable and void because the consideration the wife promised

was illegal, as violating both a statute commanding all persons with knowledge of child sexual abuse to report the abuse to law enforcement and a statute making it a crime to obtain the transfer of property by extortion. The Court refused to honor the conveyance of the property for the purposes of determining the amount of the parties' community assets. The narrow distinction to be drawn here is that the rule embodied in *Quiring* applies when the promised consideration is illegal to actually deliver or perform, whereas this case turns on the improper motivations behind the giving of otherwise legal consideration. The Court should take a 'hands-off' approach and leave the parties as it finds them.